[Civ. No. 4833.  Second Appellate District, Division One.—April 12, 1927.]

## CLARENCE ORTON et al., Respondents, v. HENRY R. DABNEY, Appellant.

[1] LEASES — FORFEITURE — TIME OF PERFORMANCE — EVIDENCE — IMPLIED ADMISSIONS — QUIETING TITLE. — In this action to quiet title after alleged forfeiture of a recorded oil lease, where said lease provided in effect that drilling should be commenced within ninety days after the lessors should show "satisfactory title" to a specified percentage of the lots in a given tract, the fact that plaintiffs and defendant thereafter entered into an extension agreement which recited that said extension was to run six months from a given date which was stated to be the expiration date for commencement of work under the original lease, was an admission by defendant that the time limited by the original lease, for beginning of work by defendant, expired on said given date; and the signing of said extension was also an implied admission by defendant that the showing of "satisfactory title," necessary to start time running on the original time limit for beginning work, had been completed at least ninety days before said date.

[2] ID. — NOTICE OF FORFEITURE — WAIVER — APPLICATION FOR EXTENSION — CONTRACTS. — In such action, notwithstanding the original lease contained a provision requiring thirty days' notice as a condition precedent to the right of plaintiffs to declare a forfeiture, and the extension agreement provided that the lease was to continue in force "the same as the original time with regard to all other terms and conditions mentioned therein and stipulated therein to be performed," the trial court did not err in admitting in evidence the written application of defendant, made after the original time for performance by him had expired, for an extension of time, where such application directly and specifically declared a waiver by him of his right of notice of termination of the lease in case he failed to start drilling operations within the extended time limit, and the written extension was based thereon, and the application and extension were but parts of one single contractual transaction, each of them being and by the parties intended to be part of the agreement.

---

(1) 4 C. J., p. 998, n. 88.    (2) 22 C. J., p. 1157, n. 47; 40 C. J., p. 1057, n. 63.

2. See 6 Cal. Jur. 264.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

I. Henry Harris for Appellant.

Head, Rutan & Scovel for Respondents.

YORK, J.—The defendant appeals from a judgment rendered against him in favor of the respondents quieting title to certain real property, and also a judgment in the sum of $1,130 as and for rent under an oil lease covering such real property.

The respondents, or in some instances their vendors, had executed a so-called community oil lease to the appellant for which they had received approximately $9,000. Subsequently, the respondents, in consideration of appellant agreeing to pay $10 per month per lot, executed what purported to be an extension of that lease. Appellant contends the respondents have no cause of action, and were entitled to no relief because respondents had failed to give appellant a written notice of his failure to perform and of their intention to enforce a forfeiture for that failure, appellant contending that the giving of thirty days' notice was a condition precedent to the right of respondents to declare the lease forfeited and re-enter the land. Appellant raised the question by demurrer to the complaint and by objecting to the introduction of any evidence at the time of trial. The demurrer was overruled as was the objection. The exact day of the month the original lease was signed does not appear in the record, except that the lease upon its face purports to be signed "on the —— day of February, 1921."

The complaint recites the ownership of the property, the making of the lease—setting it out *in haec verba*—and in said complaint they set out the execution of an extension of said lease wherein and whereby the period for commencing drilling operations under said lease was extended to the twenty-third day of March, 1922; and they allege further in the complaint that no drilling operations were commenced upon the said real property before or on the twenty-third day of March, 1922, and that no drilling operations had

been commenced since the twenty-third day of March, 1922. The complaint was verified upon the twenty-second day of May, 1922, and filed the same day. Evidence as to the contents of such extension was introduced at the time of the trial, and although there was objection thereto, the trial court found against all of the contentions of the appellant, and same was properly admitted, for the reason that there was introduced in evidence a letter signed by appellant stating that on, to wit, October 4, 1921, the date for drilling under the original lease had expired. That after the receipt of this signed statement the extension referred to was obtained apparently upon the strength of the statements made in the letter or offer signed by the appellant. The undisputed evidence shows that the appellant failed to commence drilling operations within the time limited under the offer and extension granted or at all, and his interest in the land was ended before the suit was filed. But the lease having been recorded, cast a cloud upon the plaintiffs' title, and it was necessary for them to file suit to quiet title in order that it might appear of record that the contingency upon which the lease had been given and upon which it had terminated had occurred, yet the appellant had refused to deliver and had not delivered a quitclaim deed, as he agreed to do in the extension and offer. The objection to the offer which was introduced as exhibit 2 herein was predicated on the ground that it was an attempt to vary the terms of the written instrument introduced as plaintiffs' exhibit 3. It was a part of the written negotiations entered into between plaintiffs and defendant after the failure of defendant to drill under the original lease; the only thing done by defendant in connection with the drilling being merely the deposit of certain lumber upon part of the property covered by the lease, which lumber was later removed on account of the failure of defendant to pay for same. The evidence in this case therefore practically shows an abandonment by defendant. Read together with the lease, the offer preceding the extension and the extension itself allow us to reach no other conclusion than that it was intended that the lease and all terms thereof should become null and void if drilling operations were not actually started within the time limited, that is, that all rights of defendant were absolutely terminated upon his failure to commence drilling by March 23, 1922.

The extension reciting the facts as to ownership of land more than covers any objection that might be made upon the ground that notice was to be given of the signing of seventy-five per cent of the owners of land described in the lease. No question was raised in appellant's brief as to the validity of the judgment of $1,130, and, therefore, we make no special comment as to the appeal from that portion of the judgment.

And particularly as to any question of necessity for notice, and as to any question of a showing of satisfactory title vested in the lessors to not less than seventy-five per cent of the lots included in block 1002, Vista Del Mar Tract, Huntington Beach, California, it is a matter that is fully covered by the recitals in the so-called "extension for lease" in evidence, including both the plaintiffs' exhibits 2 and 3, which the trial court for the reason heretofore given properly held were to be construed together—and such lease and such extension read together do away with any necessity for either notice of failure to drill or question of title, as therein is recited the full data as to ownership, and it is therein provided that drilling must be started on a day certain, and payment of rental must be made as therein set out. And the drilling was not commenced as specified, or at all, and default was made in payment of rental due.

The judgment of the trial court is therefore affirmed.

CONREY, P. J., Concurring.—I concur in the judgment. Concerning the facts as stated in the main opinion, it should be added that the witness J. H. Stewart testified that the lumber was not placed on the leased land. **[1]** Also, since the extension agreement, which was signed by defendant as well as by the plaintiffs, contained a recital that the extension was to run from the twenty-third day of September, 1921, this was an admission that the time limited by the original lease, for beginning of work by lessee, had expired at that date; and was an implied admission that the showing of "satisfactory title," necessary to start time running on the original time limit for beginning of work by lessee, had been completed at least ninety days before September 23, 1921.

It was provided in the lease as follows: "In the event lessee shall fail to fully perform any covenant or condition hereof on his part to be kept, performed or observed, and

except as hereinafter provided, and the lessors desire to enforce a forfeiture on account of such failure to perform and observe, the lessors shall give the lessee notice in writing of such failure to perform and observe, and of lessors' desire to enforce a forfeiture by reason thereof, and if within thirty (30) days thereafter lessee has not remedied the breach so complained of, or performed and observed, the requirement the breach of which is so complained of, then the lessee shall, at lessors' option, forfeit all rights in and to this lease, and this lease shall terminate and be at an end. . . . ''

The lease also contained an agreement concerning a possible extension of the lease in terms as follows: ''It is further agreed, however, that the time for the commencement of such work may be extended at the election of the lessee for an additional period, not to exceed three (3) months, in consideration for which extension the lessee shall pay the lessors the sum of ten ($10.00) dollars per month per lot. It is further mutually agreed between the parties hereto that if drilling operations for oil are not actually started on the premises within the said three (3) months, or said extended period of three (3) months additional time above mentioned, this lease and all the terms herein shall become null and void with no further effect on the lessors hereto.''

It will be noted that the agreement subsequently made for extension of the lease was for a period of six months, and was not merely limited to the originally contemplated extension of three months. The extension agreement says: ''And whereas, the final date allowed for commencing drilling operations under said lease was September 23, 1921, and whereas, Henry R. Dabney is desirous of securing an extension of said lease for an additional period, not to exceed six months from September 23, 1921, under the same terms and conditions and rentals as specified under the lease above mentioned, . . . we hereby renew said lease and grant an extension of the time in which drilling operations are to be commenced, up to and including the 23d day of March, 1922; it being understood and agreed by all of the parties hereto that the lease above mentioned is to continue and hold in force the same as the original time with regard to all other terms and conditions mentioned therein and stipulated therein to be performed, including the rental and royalty to be paid.''

The principal contention and ground of appeal by appellant is that by reason of the terms of the original lease, together with the terms of the extension agreement, the right of the lessors to enforce forfeiture and termination of the lease on account of the failure to commence drilling operations on or before March 23, 1922, is conditioned upon the giving of notice of the desire of lessors to enforce such forfeiture, just the same as if, without any agreement of extension of the lease, the lessors had attempted to enforce the forfeiture by reason of failure to begin drilling operations within the period of time specified in the original lease. Respondents, on the other hand, contend that by the terms of the extension agreement the lease on and after March 23, 1922, became null and void by operation of the extension agreement itself; and further contend that their interpretation of the lease and extension agreement is confirmed and made certain by reason of a written offer addressed to J. H. Stewart, by means of which appellant applied for and obtained the extension agreement. For the purpose of establishing their interpretation of the extension agreement, appellants offered in evidence and the court, over the objection of respondent, received in evidence the said written offer, together with testimony explaining the circumstances under which said written offer was made. From this evidence it appears that J. H. Stewart, who was one of the lessors, not only represented the lessors in the negotiation for said extension agreement, but also was paid a sum of money by appellant to assist appellant in obtaining such extension. In this written offer, dated October 4, 1921, appellant said: "It is further agreed that the provision in the parent lease regarding the 'failure to fully perform any covenant or condition to be kept' under said lease by me shall have no effect as to the final date under which drilling operations are to be started under said extension. In other words, on March 23, 1922, if drilling operations have not been started, this lease or extension of lease is to be null and void, without privilege of a period of grace or without any recourse, and I agree to deliver a quitclaim deed on said date to said demised property without any notice from the landowners if I have not started drilling operations by that time."

Stewart used this written offer in his negotiations with the lessors, and they all saw it before they signed the extension

agreement. In order to more conveniently distribute this information to the numerous lessors, appellant gave Stewart several copies of said written offer. Stewart testified that, based on this offer, he and the other owners granted the extension. Appellant objected to the question calling for this statement, as a question calling for the conclusion of the witness. Technically, this was a good objection, at least as to the other owners, but the circumstances so strongly support the "conclusion" that the error in the court's ruling becomes unimportant.

[2] Appellant contends that the admission in evidence of said written offer was directly in violation of section 1625 of the Civil Code, which reads as follows: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." As illustrating the point, appellant cites, among other cases, *Newhall* v. *Burns,* 31 Cal. App. 549 [161 Pac. 14], wherein this court said: "Where an agreement extending time for making payment of an installment of the purchase price of real property expressly provided that the agreement was subject to all of the terms, covenants, and conditions of the original contract of sale, such provision had the effect of carrying into such agreement all of the terms and conditions of the original contract, including the provision that time was of the essence of the contract, and no express declaration in such agreement to that effect was essential." So here it is argued that as the extension agreement, after providing for the time to which the lease was extended, provided that the lease was to continue in force "the same as the original time with regard to all other terms and conditions mentioned therein and stipulated therein to be performed," the condition and requirement of notice preceding forfeiture, as stated in the original lease, is equally applicable to the term as extended.

While the general rule is as stated in section 1625 of the Civil Code and in the decisions cited by appellant, their application to the present case is controlled by the fact that the written offer or application for extension of the lease, and the written extension itself, when executed under the circumstances to which I have referred, are but parts of one single contractual transaction, each of them being and by

the parties intended to be part of the agreement. The written offer signed by appellant directly and specifically declared a waiver by appellant of his right to notice of termination of the lease in case he failed to start drilling operations within the time limited. This waiver should control in the interpretation of the more general terms of the extension agreement as signed by the lessors. The decision on this point should be governed, and in my opinion it is governed, by the rule that several contracts relating to the same matter, between the same parties, and made as parts of substantially one transaction, are to be taken together. As was said in *Torrey* v. *Shea,* 29 Cal. App. 313, 316 [155 Pac. 820], the question as to whether or not several instruments between the same parties were contemporaneously executed and intended by the parties thereto to cover a single transaction, oftentimes cannot be ascertained from an inspection of the instruments themselves; "and consequently, if the intention of the parties be either not expressed or doubtfully expressed, resort may be had to extrinsic evidence which will show the circumstances under which the several instruments were made, for the purpose of ascertaining the intention of the parties concerning the scope and effect of the several instruments." See, also, *Greathouse* v. *Daleno,* 57 Cal. App. 187 [206 Pac. 1019]; *Spotton* v. *Dyer,* 42 Cal. App. 585, 588 [184 Pac. 23]; *Merkeley* v. *Fish,* 179 Cal. 748, 754 [178 Pac. 945].

For the reasons above stated, I concur in the judgment of affirmance herein.

Houser, J., concurred.