[Civ. No. 6512. First Appellate District, Division One.—December 22, 1928.]

SYLVESTRO SCATENA, Respondent, v. WILLIAM H. LAWSON et al., Appellants.

Athearn, Chandler & Palmer, Walter Hoffman, Edwin V. McKenzie, Harry A. McKenzie and W. F. Cowan for Appellants.

Barrett & McConnell for Respondent.

BARNARD, J., *pro tem.*—This is an appeal from a judgment on the pleadings, the trial court having held that the answers failed to set up a defense. The action is one brought to foreclose a real estate mortgage and a chattel mortgage, both made by William H. Lawson and Agnes May Lawson, his wife, and A. G. Perelli-Minetti and Jeanne Perelli-Minetti, his wife, to the plaintiff, securing the payment of one promissory note for $41,000, dated June 9, 1921, and due five years after date. The complaint, filed June 16, 1926, is in the usual form. It alleges, among other things, the payment of interest to June 9, 1925, the nonpayment of the subsequent interest and the principal, the death of A. G. Perelli-Minetti, and the appointment of defendants Charles Perelli-Minetti and Jeanne Perelli-Minetti as executor and executrix, respectively, of his last will. An answer was filed by defendants Lawson, and a separate answer by defendants Perelli-Minetti. They have also filed separate appeals.

All of the defendants admit the material allegations of plaintiff's complaint, but as a defense claim the breach of an express promise made by plaintiff, in consideration of the execution by the defendants of the note and mortgages sued on and as a part of the same transaction, which breach is asserted to amount to a failure of consideration. In this behalf, the answers allege that prior to June 9, 1921, Sylvestro Scatena, William H. Lawson, and A. G. Perelli-Minetti, were copartners in the wine business under the firm name of Scatena, Lawson & Perelli. The copartnership owned the real and personal property covered by the mortgages involved in this action, and in addition thereto owned large quantities of wine and shipping barrels. Scatena desiring to withdraw from the business, and the other two partners desiring to continue therein, it is alleged that on June 9, 1921, the date of the note and mortgages, it was agreed between the parties that William H. Lawson and A. G. Perelli-Minetti should form a new partnership under the firm name of Lawson & Perelli, and that this new partnership should take over from the old partnership all of the real and personal property covered by these mortgages. But the wine and shipping barrels, above referred to, were to be retained by the old partnership. That it was agreed that Scatena should be secured for the purchase price

of his interest in the real and personal property, so to be turned over to the new partnership, by mortgages on the whole of said properties. It is alleged that it was further agreed that the wine and shipping barrels should be sold without delay, and the affairs of the old partnership liquidated, "so that by the proceeds derived from such sale" the mortgagors might pay off and extinguish the mortgages so to be given on the other properties. It is then alleged that in pursuance of this agreement, and all on June 9, 1921, the interest of Scatena in the real and personal property covered by the two mortgages was conveyed to the above mortgagors, the mortgages were given for the purchase price, the new copartnership above referred to was formed, and as a part of the same transaction and in consideration of the other parts thereof, another written agreement was executed by the parties as follows:

"Exhibit 'C.'

"Agreement made this 9th day of June, 1921, by and between Sylvestro Scatena of the City of Healdsburg, Sonoma County, California, party of the first part, and William H. Lawson and A. G. Perelli-Minetti of the same place, parties of the second part;

"Witnesseth:

"That whereas, the parties to this agreement have heretofore conducted a copartnership under the firm name and style of Scatena, Lawson and Perelli and

"Whereas the said Sylvestro Scatena is desirous of withdrawing from said copartnership and all the parties thereto have agreed and do agree that said copartnership shall be dissolved and terminated, and

"Whereas, the party of the first part has this day conveyed to the parties of the second part all of his interest in the real estate and certain of the personal property heretofore owned by said copartnership upon the understanding and agreement that the assets of said copartnership shall be promptly liquidated and said copartnership terminated and closed,

"Now, therefore, it is mutually agreed that the partnership heretofore existent between the parties to this agreement, shall be liquidated and dissolved at as early a date as the same can be practically accomplished without loss to the parties in interest and the net assets realized, after paying

all debts and expenses of liquidating the assets and caring for the property of the partnership shall be divided in the proportion of an equal one-third each.

"Executed in triplicate this the day and year first above written.

"SYLVESTRO SCATENA,

"(Signed)  WILLIAM H. LAWSON,

A. G. PERELLI MINETTI."

Further, it is alleged that the plaintiff wilfully and fraudulently broke his express promises, as set forth in Exhibit "C" above, and in violation of his agreement has refused and still refuses to wind up the affairs of the old partnership; that he has refused to consent to the sale of the wine and barrels at market prices, or at any prices; that he never intended to perform his agreement, but did intend, by failing to perform and by preventing a sale of the other assets, to acquire for himself the whole of the mortgaged property; that the interest of the mortgagors in the said wine and barrels is greater in value than the amount of the mortgage indebtedness; that the United States Government has a lien for taxes on the wine, and the same cannot be sold until a bond for $10,000 guaranteeing the payment of the tax has been executed by said Scatena and said Lawson; that said plaintiff, in violation of his agreement and for the purpose of preventing the mortgagors from getting funds with which to pay the note, has refused to sign such a bond; that as a part of the said agreement of June 9, 1921, it was agreed that these mortgagors should care for said wine, advancing the costs thereof, which was to be repaid by the old partnership, and that they have expended in this regard the sum of $14,000, which has not been repaid. And they pray that plaintiff be compelled to liquidate the affairs of the old partnership, or that the defendants be empowered to dispose of the partnership assets; that an accounting be had and the amounts found due to defendants be offset against the amount of the note; and that, pending the accounting, plaintiff be enjoined from proceeding with this action.

Appellants' main contention is that this case falls within the rule that in a suit to foreclose a mortgage the defendant may allege, as a valid defense thereto, a breach of an express promise made by the plaintiff to the defendant, in consideration of the execution of the mortgage and as a part

of the same transaction. To this end they state that they rely on the breach of the written promises contained in ''Exhibit C,'' above set forth, but their answers conclusively show that they are also and mainly relying on the various oral promises of June 9, 1921, above mentioned. Among other cases cited in support of the above rule, the case of *Snow* v. *Holmes*, 71 Cal. 142 [11 Pac. 856], is cited as being a parallel case, and as compelling a reversal in the instant case. It may be conceded that the rule of law contended for is correct, without solving the problem in this case, other considerations being presented by the facts here.

In *Snow* v. *Holmes, supra,* the breach of the agreement was the destruction of the very property (namely, the goodwill) paid for by the mortgage. Here, it is not claimed appellants did not receive all the property they bought, or that there was any misrepresentation as to it. The express promises claimed here related to another matter, to disposing of and accounting for the proceeds of other properties belonging to the same parties. It is not even claimed that plaintiff owes any money to defendants, but merely that there are other assets the proceeds of which might have been used to pay the note, if the agreements had been kept. To say the least, the application of the rule in *Snow* v. *Holmes* to such a case as this would be an extension of that rule requiring grave and careful consideration, and appellants' claim of a parallel set of facts is unfounded.

A further consideration is that the express promises, the breach of which is claimed, not only relate to what is really, if true, another cause of action between the parties, arising out of agreements and assets, other than the mortgages and mortgaged property, but in addition they are largely if not entirely oral. Assuming that the breach of these agreements would be a defense, if they were in writing, we are met by the fact that the written agreement does not contain the promises and agreements alleged to have been broken. Parol evidence would have to be relied upon to prove the vital portions of the defense claimed. While want of consideration for a note may be shown by parol evidence, the making and breaking of a contemporaneous oral agreement, entirely at variance with the terms of a written agreement, may not be so shown. (*Carver* v. *San Joaquin Cigar Co.*, 16 Cal. App. 761 [118 Pac. 92].) In this case,

the obvious intent of the allegations of the answer is to change the terms of payment of a promissory note by testimony of an oral agreement. To permit this, the court would have to modify the absolute terms of a note and mortgages, with a definite provision for the payment of a certain sum on a certain date, by permitting testimony to show that the payment of the money was contingent upon the sale of other assets. This cannot be done. (*Lindemann* v. *Coryell*, 59 Cal. App. 788 [212 Pac. 47]; Civ. Code, sec. 1698.)

Again, even if it be assumed that the alleged broken promises were sufficiently a part of the mortgage transaction to permit them to be set up in defense to the mortgage, and if it be further assumed that testimony could be admitted, under the circumstances alleged, to show that in spite of the absolute terms of the note, it had been agreed that payment should be made only after certain other assets were sold, it having been agreed that these should be sold for this express purpose, we must then face another fact, namely, that in this case these parties did not rely on any such oral agreement but went further. After alleging in their answer that an agreement had been reached, setting forth the terms thereof, which agreements and promises are the very ones alleged in the answer to have been broken by the plaintiff, they then allege the acts done "pursuant to said agreement," which includes the execution of the note and mortgages and the execution of the written agreement above quoted in full. This written agreement falls far short of containing the agreements contended for by the appellants as having been theretofore made, and relied upon by them as a defense to the note. On its face it would indicate that it was not interdependent with the note and mortgages. It does not mention the latter, or the payment thereof in any manner; it contains nothing to show the object of the desired quick sale of the partnership assets was to pay the note; there is no agreement therein that the plaintiff is to be paid the amount of the note from the sale of the assets, that he is to wait until the assets are sold before being paid, or even that any cash received from the sale of the assets is to be applied on the note. Neither does the plaintiff agree to sign any bond to cover the payment of any taxes on the wine. The written agreement indicates that the mortgagors were to be the liquidating partners, as it recites

that the property was conveyed upon the agreement that the assets were to be promptly liquidated. That this was true is affirmatively alleged by defendants Perelli-Minetti. If this be not the effect of the agreement, then any one of the partners could have disposed of the assets. (*Hawm v. Land & Water Co.*, 74 Cal. 418 [16 Pac. 196]; Civ. Code, secs. 2459, 2460.) The agreements, the breach of which is relied on by appellants, are missing from the written agreement. They cannot be supplied by parol. Under the circumstances pleaded, it must be assumed that all of the previous agreement was merged in the written documents. To admit parol evidence, not only to change the definite payments of a note into contingent payments, but in addition to add to and change the terms of written instruments entered into after and in pursuance of a full agreement previously worked out and agreed to, would be to set aside all established rules of law and let down the bars entirely. The writing ("Exhibit C") is not ambiguous, at least, as to the terms appellants want to explain. It leaves no doubt as to what is to be done with the proceeds of the sale of the assets, which are to be divided between the partners.

That the parties themselves did not consider the note and mortgages and the agreement as interrelated, and that they were not expecting to rely only on the proceeds of the sale of the assets to pay the note, is indicated by the fact that, in spite of the continuing neglect of the plaintiff to keep his promises, as alleged, they paid all interest due for four years, retained the property, and apparently nothing was done until after the note became due, five years after its execution. While the record is silent on the point, it is possible that the delay in disposing of the stock of wine may have been partly caused by certain well-known laws and existing conditions, and not entirely by the broken promises of the plaintiff. While appellants have alleged that the breach of agreement, with which respondent is charged, occurred with fraudulent intent, the answers contain no allegations of fact, showing fraud, and the facts alleged do not warrant the setting aside of the written contracts on that ground.

An additional point, urged by appellants Perelli-Minetti is that the respondent, by executing a grant deed to the real property involved, warranted the property to be free

from all liens, and an attempt is made to set up a breach of this warranty. Aside from any other considerations, however, the answer contains no sufficient allegation of the existence of the lien, and no allegation whatever of any damage sustained thereby. (*Thurgood* v. *Spring*, 139 Cal. 596 [73 Pac. 456].)

The consideration of other points raised is rendered unnecessary by the views herein expressed. A promissory note is not to be lightly set aside. Though well-defined exceptions to the rule that testimony is not admissible to add to, contradict, or vary the terms of a written instrument, necessarily exist to meet special circumstances, no facts are here alleged to bring this case within any such exception. No defense having been set up by the answers, judgment for the plaintiff, on the pleadings, was properly entered.

The order and judgment appealed from are affirmed.

Tyler, P. J., and Knight, J., concurred.