[S. F. No. 14171. In Bank.—July 30, 1931.]

JOSEPH WILLIAMS, Respondent, v. LOUIS SILVERSTEIN et al., Appellants.

Edward J. Lynch for Appellants.

E. B. Mering for Respondent.

THE COURT.—A hearing was granted herein in order that we might give further consideration to the questions at issue, after decision by the District Court of Appeal in and for the First Appellate District, Division One, Jorgensen, J., *pro tem.*, writing the opinion. Upon such consideration we are satisfied that the reasoning and conclusions of the appellate tribunal were correct; that the signatures of the appellants on the back of the promissory notes sued upon constituted them indorsers and not original makers or guarantors thereof; that the trial court was in error in the admission of oral evidence for the purpose of varying that relation; and that, if not in error in so doing, the evidence thus permitted to be educed showed clearly and without substantial contradiction that at the time of the execution of the instruments the plaintiff knew and was informed by his own counsel, who drew and attended to the execution thereof, that the appellants were executing the same as indorsers and not as original makers thereof, and that the plaintiff so understood that to be their relation thereto at the time he undertook to give his belated notice of dishonor.

The portion of the opinion of the appellate tribunal, which we hereby approve, reads as follows:

"This is an action on a complaint in six counts, based upon two promissory notes given to plaintiff as part of the purchase price of a lease to and furniture in an apartment house in the city of San Francisco. The notes are both negotiable in form, are for $500 each and are identical excepting that one was payable June 10, 1926, and the other September 10, 1926.

"The first and second counts appeared to charge the defendants as joint makers with one Huber on the two notes. The third and fourth counts appear to charge them as accommodation endorsers for Huber, while the fifth and sixth counts seek to hold them as endorsers. Each of the notes contained a clause 'we promise to pay', etc. (the 'we' being written in with a typewriter) and were signed at the end by Lee Huber only and underneath his signature are two blank lines. On the back of each note appears the signature of

         " 'Louis Silverstein
         " 'Louis Sanders'.

"The first paragraph of each count alleges that on the 10th day of March, 1926, the plaintiff entered into an agreement to sell to one Lee Huber and Isadore Silverstein a certain lease and furniture of an apartment house on Ellis street in San Francisco for $4,850; that on the day the sale was to be consummated this contract was modified 'by agreeing to accept $1200.00 in cash and the balance of $1000.00 to be paid by a promissory note executed by Lee Huber, Louis Sanders and Louis Silverstein'.

"It appears from the evidence that Isadore Silverstein and Lee Huber, two taxicab drivers, were desirous of acquiring an apartment house as a side line. The defendant Louis Silverstein, who was a real estate agent and builder, was a brother of Isadore Silverstein. Defendant Sanders was engaged in farming and buying and selling country lands, with headquarters at Sacramento. Defendants Louis Silverstein and Sanders negotiated with plaintiff, who was in the real estate business and selling leases and apartment house furniture, and who owned an apartment house lease and furniture on Ellis street in San Francisco, for the sale of said lease and furniture, and agreed to pay the plaintiff a commission for making a sale.

"On March 10, 1926, the date of the notes, the plaintiff met in the office of Judge Tyrrell, plaintiff's attorney, with Lee Huber and Isadore Silverstein (the alleged purchasers), together with the defendants Louis Sanders and Louis Silverstein, who contended that they were acting merely as brokers in the transaction, and the note was signed by Lee Huber. Plaintiff's own testimony as to what transpired in the office of his attorney is highly illuminating, in view of his contention that defendants were makers.

"He testified: 'Sanders and Silverstin signed on the back of the notes. I said to Judge Tyrrell, "How about these notes? Shouldn't these be comakers?" He said that they were just as responsible on the back of the note as if they were on the front of it. I took his word for it. He said, "Whether they are makers or comakers or endorsers, they guarantee the payment of the note and what is on the back of it is the same as the ones on the front of it." I said, "He ought to be a comaker." '

"He testified further: 'I said, "Tyrrell, wouldn't it be possible to have a comaker on there—an endorser?" He

said, "It doesn't make any difference, one is the same as the other." He said, "Don't put my brother on there and I won't go on there, and we will go on the back of it." That is what he said, "I don't want my brother to go on the front of it on the face of the note, but let Huber go on the face of it." That is just exactly the remark he made. I saw the notes signed and endorsed and accepted them under the advice of my attorney. My attorney, Mr. Tyrrell, said, "The notes or the endorsements on these notes, will hold these men and make them pay if the notes are properly endorsed." Silverstein said, "We will endorse them on the back," I said, "All right," so he put Huber on the face and he and Sanders went on the back.'

"The attorney also drew up an escrow agreement under which plaintiff's attorney, John R. Tyrrell, was made an escrow holder, which reads as follows:

" 'San Francisco, March 10th, 1926.

" 'John R. Tyrrell,

" ' #995 Market street,

" 'San Francisco.

" 'My Dear Sir:—

" 'Enclosed herewith we hand you agreement for the sale of the rooming house, designated as #1622–1624 Ellis street, San Francisco, which agreement was executed between Theodore Kupper, as the party of the first part, and A. G. Rehnstrom and A. Johannson as party of the second part, and thereafter assigned by the latter to Joseph Williams, and thereafter by the said Joseph Williams assigned to Lee Huber.

" 'The condition of the agreement calls for a payment of forty-eight hundred and fifty ($4,850) dollars, less an incumbrance of twenty-five hundred ($2,500.00) dollars. Of this amount thirteen hundred and fifty ($1,350.00) dollars has been paid, receipt of which is hereby acknowledged, and the further sum of one thousand ($1,000) dollars is to be paid as follows: Five hundred ($500.) dollars on or before the 10th day of June, 1926, and five hundred ($500.00) dollars on or before the 10th day of September, 1926, according to the terms of the promissory note, covering said sum.

" 'There is also deposited with you a lease upon the said premises covering a period of five (5) years from April 1st, 1926, running in favor of Lee Huber.

" 'These documents you are instructed to hold as escrow holder until Lee Huber shall have paid to you the sum of ten hundred ($1,000) dollars and interest, according to the terms of the promissory note, and when such sum has been paid in full with interest you are authorized and directed to deliver to him the said lease and your services as escrow holder will then be terminated.

" 'Lee Huber,
" 'Louis Silverstein,
" 'Jos. Williams.'

"The taxicab drivers lost money in the apartment house business. The notes were not paid and plaintiff brought a previous action seeking to hold Huber as maker and these defendants as endorsers, but these defendants were granted a nonsuit in that action because plaintiff had not made proper presentment of the notes and notice of dishonor had not been given to these defendants as endorsers.

"The findings in the case were to the effect that defendants executed said note as joint makers and that plaintiff had agreed to sell the apartment house lease and furniture to defendants Louis Sanders and Louis Silverstein. Neither of these findings are supported by the evidence.

"The evidence affirmatively shows that the defendants signed as endorsers and that the plaintiff accepted the notes with that understanding on the advice of his attorney. Not only his own testimony, but the testimony of the defendants are all to that effect. The plaintiff by his own acts subsequent to the execution of the notes showed that was his understanding by causing a notice of dishonor to be sent on one of the notes to one of the defendants as endorser and by instituting his first suit against them as endorsers, and there is no evidence in the record worthy of the name to show that the defendants ever signed in any other capacity.

"The finding to the effect that plaintiff entered into a written agreement with both the defendants, Louis Sanders and Louis Silverstein, to sell this apartment house and furniture, cannot be sustained on any theory.

"The verified complaint alleges that plaintiff entered into a contract to sell this apartment house and furniture to Lee Huber and Isadore Silverstein. The answer admits this allegation. There was, therefore, no issue before the court as to the parties to the agreement of sale. No amendment of the complaint was even suggested. There is no written agreement between the parties in evidence to this effect or even suggesting it. The only thing upon which the court could possibly base such a finding is the escrow agreement set forth above. It certainly cannot be sustained as such an agreement. It was not signed at all by the defendant Sanders and was signed by Silverstein, as he testified, as a matter of form as the broker in the transaction, or as plaintiff's attorney testified, he signed more as a guarantor than as a principal. The escrow agreement shows on its face that the sale was made to Huber, and provided that the notes were to be signed by Huber and the lease was to be made out to Huber and referred to an assignment of sale contract from the plaintiff to Huber.

█ "Respondent contends that the notes were non-negotiable, and therefore defendants became liable as guarantors. At the time the notes were executed the escrow agreement was also executed, and provided that the lease should be delivered upon the payment of the notes. It is true that a negotiable instrument may be rendered non-negotiable where it is intended to incorporate the terms of a separate agreement with the instrument itself if the terms of the whole agreement are incompatible with negotiability. (19 Cal. Jur., p. 811.) But even though the agreement be written upon the same paper that the note is written on, where it is evident that it was not intended to incorporate the terms of the agreement within the note itself, the transferability and negotiability of the note will not be affected by the agreement. (*Pitman* v. *Walker,* 187 Cal., at p. 671 [203 Pac. 739].) █ The notes here do not refer to the escrow agreement, but contains an absolute and unconditional promise to pay at a certain time. But considering together the notes and the escrow agreement as constituting one transaction, we do not discover an intention to make the payment dependent upon any contingency. The escrow agreement is in no way incompatible with the terms of the notes, nor does it purport to change, limit or modify the

provisions of the notes. On the other hand, it provides that the payment is to be made in accordance with the notes.

■ "The evidence in this case clearly shows, and the fact is undisputed, that proper presentment of the notes had not been made and notice of dishonor had not been given so as to hold defendants as endorsers of negotiable paper. It is true that notice of dishonor was sent to the defendant Sanders as endorser of the first note, but was sent five or six days after it became due, and it was therefore too late. (Secs. 3170 and 3184, Civ. Code.)

■ "The court, over the objections of defendants, admitted oral evidence of conversations between certain of the parties which took place prior to and contemporaneous with the execution of these notes and the escrow agreement, and which tended to vary, modify and change the terms thereof. This was prejudicial error.

"The general rule that proof of contemporaneous parol declarations and agreements is inadmissible to contradict, vary or alter the terms of a written contract is applicable to an attempt to prove a prior or contemporaneous parol agreement or declaration to affect the terms of a bill or note where the bill or note is not uncertain, doubtful or ambiguous. (Uniform Laws, Annotated, vol. 5, p. 22; *Citizens' Bank of Los Angeles* v. *Jones*, 121 Cal. 32 [53 Pac. 354]; *Quatman* v. *Superior Court*, 64 Cal. App., at 208 [221 Pac. 666].) If the defendants in this case had signed the note on its face below the signature of Huber, could it be said that they might show by parol evidence they signed as endorsers only? The answer is obvious. Such evidence is not admissible, whether the note be negotiable or non-negotiable. (*Lindemann* v. *Coryell*, 59 Cal. App. 788 [212 Pac. 47].) If this were not the rule it would lead to chaos in all business transactions.

■ The mere fact that the notes contained the words 'we promise to pay' has no significance, even though signed by only one maker, with two blank lines below his signature, in view of the state of the record in this case. The words 'We promise to pay' cannot be held to include endorsers or other parties whose names are not signed as makers. (*Hobson* v. *Hassett*, 76 Cal. 203 [9 Am. St. Rep. 193, 18 Pac. 320]; *Bean* v. *Pioneer Min. Co.*, 66 Cal. 451 [56 Am. Rep.

106, 6 Pac. 86]; *Farmers' etc. Bank* v. *Colby,* 64 Cal. 352 [28 Pac. 118]; *Whitmore* v. *Nickerson et al.,* 125 Mass. 496 [28 Am. Rep. 257].)''

The judgment is reversed, with direction to the trial court to make and file its findings of fact and conclusions of law in conformity with the views expressed in the foregoing opinion and thereon to render and enter its judgment in favor of the defendants and appellants herein, with costs.

Rehearing denied.