[Civ. No. 5040. Third Appellate District.—November 13, 1934.]

E. A. LYNCH, as Trustee in Bankruptcy, etc., Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation) et al., Respondents; H. W. FORCE et al., Cross-Complainants and Appellants.

Joseph L. Lewinson and Benjamin S. Crow for Appellant.

Pillsbury, Madison & Sutro for Cross-Complainants and Appellants.

Woodruff, Musick & Hartke, George Martinson, Louis Ferrari, Edmund Nelson, Paul E. Yonkin, Gibson, Dunn & Crutcher, Norman T. Mason and Oscar L. Willett for Respondents.

THOMPSON, J.—The plaintiff has appealed from that portion of a judgment which declares and enforces an indenture of trust involving the subdivision and sale of real property. ▪ This challenged portion of the judgment determines that a separate written instrument which was accepted, adopted and ratified by the trustee at the same time and as a part of the declaration of trust should be construed with it and has the effect of deferring the payment of certain fees and commissions belonging to E. G. Lewis, the trustor, according to the terms thereof. This contract is dated February 17, 1923, and the court found that it provides in part:

"The fees and compensation of the said E. G. Lewis under the said Commonwealth Trust Company indenture, if the same should be accepted by the Commonwealth Trust Company, should be deferred until such time as in the opinion of the said Commonwealth Trust Company said payment can be made without interfering with the successful carrying out of the project."

The appellant asserts this written agreement, which is the sole subject of controversy on this appeal, is a separate contract which was executed previous to the adoption of the declaration of trust, that it is in conflict with the provisions of the trust, and that the court erred in receiving oral evidence with respect to that separate instrument.

On the contrary, the respondents contend that this agreement to defer the payment of fees and commissions was adopted at the same time and as a part of the original declaration of trust between E. G. Lewis, trustor, and the Commonwealth Trust Company, trustee, as shown by the written resolution of that trust company passed February 19, 1923, that these two instruments should be construed together, and that the rule with reference to the varying of a written instrument by parol evidence is not involved in this case.

This suit was instituted by the trustee in bankruptcy of the estate of E. G. Lewis, primarily to declare that the bankrupt has an interest in the funds of a trust enterprise which was created for the purpose of subdividing and selling real property. The complaint also asked for an accounting. The separate written agreement which purports to defer the payment of the fees and commissions due to E. G. Lewis, and which modifies the trust agreement with relation to the time of such payments was set up in the answer of the Bank of Italy National Trust & Savings Association (now the Bank of America National Trust & Savings Association), as a special defense. The pleadings are complicated. The court adopted findings declaring the validity of the trust agreement and determining the interest of Lewis in the funds therein, but held that the separate written contract in question should be construed as a part of the trust and that it has the effect of deferring the payment of the Lewis funds as provided therein. This appeal is presented by means of a bill of exceptions which is con-

fined to the proceedings and evidence applicable to the question of the validity and effect of the deferment contract alone.

August 23, 1921, E. G. Lewis held an option for the purchase of 16,000 acres of lot "H" of the Rancho Palos Verdes of Los Angeles County for the sum of $5,000,000. December 16, 1922, E. G. Lewis, as trustor, and Title Insurance & Trust Company, as trustee, executed an elaborate written declaration of trust, providing for the conditional purchase of the 16,000-acre tract of land for $5,000,000, together with a plan for subdivision and resale of the property and the marketing of shares in the enterprise represented by promissory notes. The declaration of trust also provided for payment to the trustor of a specified percentage of the proceeds of sales and authorized a termination of the trust at the option of the trustee for failure of the enterprise within a specified period of time. The project contemplated the raising of $15,000,000. Shares were sold in the aggregate sum of approximately $5,000,000. The trust, however, failed and the Title Insurance & Trust Company terminated the trust in the manner provided by the contract and reassigned its interest to Lewis, who had been paid no part of the fees or commissions due to him.

February 17, 1923, Lewis executed the written agreement with the Commonwealth Trust Company, which is the subject of this appeal, agreeing to defer the payment of his fees and commissions in consideration of the last-mentioned trust company accepting and becoming a party to a trust agreement similar to the original one above mentioned, except that the proposed new agreement was to cover a different real estate enterprise involving only 3,200 acres of the Rancho Palos Verdes, to be purchased for the sum of $1,000,000. This deferment contract, which is here involved, reads in part:

"Whereas, first party (Lewis) under said trust indenture is entitled to certain fees and compensations, as set out therein in the event that the carrying out of said project is undertaken by the said trustee, and

"Whereas, said trustee is now about to decide whether or not to undertake the carrying out of said project and whether or not sufficient subscriptions and/or funds

are in its hands to warrant it in proceeding with said project; and

"Whereas, the trustee deems it to be absolutely essential to the successful carrying out of the enterprise that the payment of all the fees and compensations of the first party be deferred until such time as in the opinion of the same trustee said payment can be made without interfering with the successful carrying out of the project:

"Now, therefore, the parties hereto agree as follows:

"(1) The first party agrees that in consideration of the trustee undertaking to carry out said project that the payment in cash of all of the fees, compensation and deferred interest payments which may become due and payable to the first party under the terms of said trust indenture shall be deferred until such time as in the sole judgment of the trustee there shall be funds sufficient and ample in the possession of the trustee under said trust to warrant it in making such payment, or portions thereof, from time to time. . . .

"(2) The second party agrees that if it finally determines that as trustee under said trust indenture to proceed with said project, it will in consideration of this agreement, proceed with the said undertaking, but it is expressly agreed, and the trustee hereby expressly declares that it does not deem that there is now sufficient cash in hand to permit it to proceed, except by the use in the carrying out of the general project of the cash made available to it for such use under this agreement. . . .

"E. G. Lewis, First Party.
"Commonwealth Trust Company,
"By Jay Lawyer, President.
"By H. E. Benedict, Secretary."

At a regular meeting of the board of directors of the Commonwealth Trust Company, a corporation, held on February 19, 1923, the preceding agreement was accepted and adopted as a condition precedent to the trust company becoming a party to the proposed real estate enterprise involved in the trust last mentioned. It was accepted, ratified and executed by the corporation on the last-mentioned date. The trust agreement was then executed at the same time and as a part of the same transaction.

Thereafter E. G. Lewis secured a separate option to purchase 3,200 acres of the Rancho Palos Verdes for the sum of $1,000,000. This option was subsequently assigned to the Commonwealth Trust Company, and exercised on March 2, 1923. The declaration of trust which was executed February 19, 1923, between E. G. Lewis, as trustor, and Commonwealth Trust Company, as trustee, involving the 3,200-acre tract of the Rancho Palos Verdes, is separate and distinct from the original trust agreement with the Title Insurance & Trust Company involving 16,000 acres of that same tract, but the declaration of trust with the Commonwealth Trust Company was in the same form and language which was employed in the original agreement, except that it involves only 3,200 acres of the original tract which was secured by a subsequent option for the purchase thereof, and except that it is modified by the agreement which is involved in this suit. As a matter of convenience many subscribers to the original enterprise resubscribed with the present Commonwealth Trust Company project. That method of transferring the interests of subscribers is immaterial to the solution of this case. January 5, 1925, E. G. Lewis was declared a bankrupt. This suit was instituted by the trustee of the bankrupt estate of E. G. Lewis to establish the trust agreement with the Commonwealth Trust Company, and to determine the bankrupt's interest in the funds thereof. The court adopted findings declaring the validity of that trust and determining the interest of the bankrupt in the funds thereof. These findings are not challenged. But the court also found that the ''deferment agreement'', heretofore quoted in part, was duly executed by E. G. Lewis and the Commonwealth Trust Company, and ''that the Commonwealth Trust Company accepted its said trust in reliance upon the terms of the said deferment agreement and would not have accepted said trust except for the execution of said agreement'', and ''that the said deferment agreement is in full force and effect and binding upon the parties thereto''. It was then found there were insufficient funds in the trust enterprise to warrant the present payment of the fees and compensation due to Lewis or his assignees, and that their compensation from that source is subject to the terms and conditions of the said deferment contract. Judgment was

rendered accordingly. From this portion of the judgment an appeal was perfected.

It is true that the original declaration of trust with the Title Insurance & Trust Company did provide for payment to Lewis, the trustor, of "five per cent of the principal amount of all registered subscriptions and cash proceeds from sales and leases of trust real property, . . . when the trustee is in a financial position to exercise the said option". It is true, according to the original trust indenture, that other payments were to be made to Lewis from the proceeds derived from that enterprise. And it is true the trust instrument also provides: "This trust indenture may be amended, changed or added to at any time and in any respect and as to the effect of the whole, or any part hereof, by and with the consent in writing of: (1) The Trustee; (2) The first party; and (3) The owners of fifty-one per cent of the principal amount of all outstanding registered notes and registered subscriptions."

The deferment agreement, which is the subject of controversy on this appeal, does change the time and manner of paying to E. G. Lewis his fees and commissions as provided by the terms of the former trust indenture. But the court found, and that fact is not disputed on this appeal, that the original declaration of trust with the Title Insurance & Trust Company was terminated. Neither the makers of notes nor the subscribers to that original enterprise, as such, were interested in the new declaration of trust which was subsequently executed with the Commonwealth Trust Company. It does appear that some of the original makers of notes and subscribers of the first enterprise did subsequently renew their subscriptions in the new project. That, however, constituted a different transaction. These renewals of subscriptions do not affect the terms of the present trust. So far as the record in this case is concerned, this trust is separate and distinct from the original Title Insurance & Trust Company transaction, and the resubscriptions to the new project were not made upon any terms or conditions which affect this appeal. The original trust company was not converted into the present organization. In view of the fact that the original trust agreement with the Title Insurance & Trust Company is not the contract which controls the present enterprise, the

amendment of that instrument is not involved in this case. According to the findings of the court the form of that original declaration of trust was merely used by the parties to this trust as a pattern for a new and distinct organization. In no sense which becomes binding on the present enterprise were the provisions of the original trust instrument amended. The method of amending that document as provided by its terms was therefore immaterial. The court found that what did occur was that the new enterprise adopted a different declaration of trust following the form of the original instrument modified by a change with respect to the acreage and with respect to the description of the real estate involved, and by making certain other changes which are not involved on this appeal. It also found that the separate written deferment contract which was prepared and signed by E. G. Lewis, the trustor, on February 17, 1923, was accepted, adopted and ratified by the Commonwealth Trust Company, as trustee, two days later, at the same time and as a part of the final declaration of trust which is controlling in this case. These findings are in accordance with the judgment. The judgment and findings are amply supported by the evidence in that respect.

Regarding the fact that the challenged deferment contract was adopted by the Commonwealth Trust Company at the same time and as a part of the final declaration of trust which controls the enterprise involved in this suit, the bill of exceptions discloses a memorandum of the resolutions of that corporation which were adopted at a regular meeting of the trustees thereof, at a meeting of the board held on February 19, 1923. The minutes of that meeting show that a copy of the original trust indenture previously adopted by the Title Insurance & Trust Company, together with certain amendments thereto were presented and read to the directors. The minutes then recite that ''The Secretary then presented and read to the Board a certain agreement between Mr. E. G. Lewis, as first party, and Commonwealth Trust Company, a corporation, as second party, dated February 17, 1923, duly executed by said E. G. Lewis and by said Commonwealth Trust Company by Jay Lawyer, President, and H. E. Benedict, Secretary'', which is the same deferment contract heretofore quoted, and which is

the subject of this controversy. The minutes of that board then certify that:

"I, H. E. Benedict, Secretary of the Commonwealth Trust Company, do hereby certify that the annexed Trust Indenture Palos Verdes Project, marked as Exhibit 'A', and the annexed amendments to said Trust Indenture marked Exhibit 'B', and the annexed Renewal of Subscriptions and Trust Indenture, marked Exhibit 'C', are full, true and correct copies of the original documents . . . as the same were on the 19th day of February, 1923, formally adopted by the Commonwealth Trust Company of Los Angeles, under and by virtue of a resolution duly enacted."

The trust agreement was then accepted and adopted by the Commonwealth Trust Company, together with the amendments thereto, including the "deferment agreement" in controversy, as one declaration of trust, as shown by the resolution of the board, as follows:

"Be It Resolved: That Commonwealth Trust Company does hereby accept the said Trust as contained in the original Trust Indenture *and as modified in the amendments* hereinbefore recited and the renewal or subscriptions hereinbefore set forth and referred to, and does hereby agree to act as Trustee in accepting renewals of subscriptions and new subscriptions under said trust indenture, *as amended and modified,* and *in accepting, receiving and disbursing monies paid in thereunder* and under orders of transfer to the Title Insurance and Trust Company."

■ There is no doubt that the interest of E. G. Lewis in the trust fund, represented by his fees and compensation for services in promoting the real estate enterprise, was assignable and that it was validly conveyed to his assignees. (*Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629, 649 [218 Pac. 14]; *Bridge* v. *Kedon,* 163 Cal. 493, 500 [126 Pac. 149, 43 L. R. A. (N. S.) 404]; 5 C. J. 854, sec. 17; 3 Cal. Jur. 236, sec. 3.) This fact is not controverted.

■ The deferment contract was clearly executed and accepted by the contracting parties as a part of the declaration of trust. The language of these instruments indicates that they were intended to become a part of the same transaction. Section 1642 of the Civil Code provides in that regard:

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

The rule that separate written documents between the same parties and relating to the same subject-matter as indicated by the language contained therein, or satisfactorily proved by the circumstances under which they were executed, are to be construed together as one transaction, has been determined by so many authorities there is no room for controversy regarding that principle. (*Burleson* v. *Northwestern Mut. Ins. Co.*, 86 Cal. 342 [24 Pac. 1064]; *Hawes* v. *Lux*, 111 Cal. App. 21 [294 Pac. 1080]; 6 Cal. Jur. 298, sec. 181; 13 C. J. 528, sec. 487; 6 R. C. L. 850, sec. 240.) This rule applies even though the separate written instruments were not executed on the same date.

The deferment contract which is involved in this appeal specifically refers to the declaration of trust and thereby clearly indicates that the two instruments were to be construed as a part of the same transaction. These two instruments were specifically accepted and adopted by the Commonwealth Trust Company at the same time as parts of the same transaction. They were properly admitted in evidence and construed by the trial court as parts of the same transaction.

A separate appeal was perfected by the defendants and cross-complainants H. W. Force, J. R. Gwynn, W. S. Bliss, E. C. Pitcher, H. F. Stewart, Frederick Johnson and E. L. Elberg, from the same portion of the judgment from which the plaintiff appealed. This appeal is presented on the same bill of exceptions and is submitted on the same briefs which were filed in behalf of the plaintiff. It is determined in the same manner and for the same reasons heretofore stated with relation to the plaintiff's appeal.

The portion of the judgment separately appealed from by the plaintiff and by the defendants and cross-complainants is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 10, 1935.