131 Cal.App.2d 780 (1955)
MYRTLE CADIGAN, Respondent,
v.
AMERICAN TRUST COMPANY, as Executor, etc., Appellant.
Civ. No. 16257. 
California Court of Appeals. First Dist., Div. One. 
Mar. 25, 1955.
 Cushing, Cullinan, Duniway & Gorrill and Vincent Cullinan for Appellant.
 Jarvis, Miller & Decker and Charles W. Decker for Respondent.
 WOOD (Fred B.), J.
 April 12, 1944, Margaret Grant executed and delivered to James and Myrtle Cadigan a deed conveying certain real property to the Cadigans and received from them their promissory note in the principal sum of $6,150 bearing interest at 6 per cent (payable at the rate of $42.50 a month) and deed of trust securing the note.
 August 10, 1944, Margaret Grant wrote, signed and mailed the following letter to the Cadigans: "You have bought from me a parcel of property (known as Number 2207 - 19th Ave) upon which I hold a Trust Deed for $6,150. Your payments interest and principal is $42.50 per month. I agree to leave a release upon my death leaving you the balance of the unpaid principal free of my mortgage providing your payments are lived up to, as per our agreement, each month. $42.50 Principal and interest."
 Margaret Grant died May 14, 1953. She left no "release" by will or otherwise. The Cadigans had made all the installment payments which had accrued on the note and were not in default at the time of decedent's death. There was still unpaid upon the note, according to its terms, the sum of $4,478.48.
 Myrtle Cadigan [fn. *] brought this action against the executor of Grant for cancellation of the note, reconveyance of the trust estate, and recovery of monthly installments, totalling $297.50, which plaintiff had paid to the executor since the death of the decedent.
 The trial court found that the deed, the note, the deed of trust, and the letter were executed and delivered in accordance *782 with and pursuant to the terms of an oral agreement between the parties thereto, and gave judgment for the plaintiff.
 The parties are agreed that the sole question upon this appeal is whether the admission and consideration of evidence of the oral agreement and of Grant's letter of August 10, 1944, was a violation of the parol evidence rule. Defendant views the note and deed of trust as the final integration in writing of the agreement of the parties, one which upon its face purports to be a complete expression of the whole agreement and thus does not permit the use of extrinsic evidence to vary its terms. Plaintiff, upon the other hand, claims that the note, the deed of trust, and the letter must be read and construed together as a single integrated contract.
 The inquiry starts with the scrutiny of two writings: The promissory note of April 12th, an absolute and unqualified commitment to pay $42.50 per month until $6,150 and interest thereon shall have been paid; and the letter of August 10th, a firm commitment that if the monthly installments are punctually paid as they fall due the amount which remains unpaid upon the death of the payee shall be cancelled. It appears from the letter that these two writings bear a potential legal relationship, each to the other.
 Our first inquiry is whether each of these writings was given for a consideration. [1] The answer is "yes." The recital of consideration in the promissory note ("for value received") is noncontractual in nature. In that type of case the "true consideration may always be shown by parol" (Wells v. Wells, 74 Cal.App.2d 449, 457 [169 P.2d 23]; see also cases collected in 18 Cal.Jur.2d 754-756, 270) as well as such matters as execution and delivery (18 Cal.Jur.2d 756-758, 271). [2] The promissory note represented the major portion of the purchase price of the property deeded to the makers by the payee. The promise to remit the unpaid portion of the principal upon the death of the payee was an integral part of the bargain, the major inducement to the Cadigans to buy.
 We thus seemingly have two "contracts [instruments] relating to the same matters, between the same parties, and made as parts of substantially one transaction," which "are to be taken together." (Civ. Code, 1642.) The questioned parol evidence demonstrates that such is the case. It consists principally of the testimony of Mr. and Mrs. Cadigan. It shows that they had been tenants of this property for some time when Mrs. Grant suggested that they buy the place, *783 offering to let them have it for a small down payment ($350), the balance to be paid at the same rate as their rent ($42.50 monthly), and, upon her death, the amount of the principal then remaining unpaid would be cancelled if meanwhile they kept up the monthly payments. She told them she was making similar arrangements with others of her tenants, to reduce her tax burden and to be relieved of the task of employing people to take care of her properties, adding that she had no relatives and would rather have her property go to her tenants than to the state.
 Mr. Cadigan testified fully concerning the oral agreement. As to the cancellation of the unpaid residue of the note upon the death of the payee, he testified that Mrs. Grant "said if I would buy the property that she would fix in writing, yes, fix in writing the property would revert to us, title clear and no further payments on--in the event of her death. And I says: 'Well, that's just an oral statement right now,' I says, 'Will you actually do that for us?' and she said, 'I certainly will.' " Continuing, he testified that he accepted this proposal and made an appointment to meet her at the title company the next day, when she executed the deed and the Cadigans executed the note and the deed of trust. Upon that occasion he asked Mrs. Grant if she was going to "fix up this writing for us that she said she would, and she said: 'Well, I'll put that in the mail for you.' " He did not receive that writing from her right away; "I believe it was at least three or four months elapsed and I spoke to Mrs. Cadigan, I says: 'Why don't you call Mrs. Grant and get that letter she promised us?' which she did"; and in a day or two Mrs. Grant mailed them the letter of August 10, 1944.
 Mrs. Cadigan testified that when she phoned Mrs. Grant to remind her about the agreement to cancel the note on her death "she said she was sorry she hadn't sent it before and she would send it." Mrs. Cadigan had not asked Mrs. Grant for it before that time, after the note was executed. About August 10th was the first time she asked for it, and Mrs. Grant sent it.
 The evidence amply supports the trial court's finding that not all of the terms of the oral agreement were reduced to the writings contained in the promissory note and the deed of trust. An important part of them was reduced to writing in the form of the letter of August 10, 1944, from the payee to the makers of the note. In short, these writings were *784 made as parts of one transaction and therefore are to be taken together. Thus viewed, they constitute one written contract, the final written memorial of the parties.
 Mrs. Grant's letter is like the letter penned by the payee of one of the promissory notes involved in Symonds v. Sherman, 219 Cal. 249, 251-253 [26 P.2d 293]. That letter was found pinned to the note, among the effects of the payee, after her death. In it the payee declared that the note "is to be given back to" the maker of the note "at the time of my death." It was shown by extrinsic evidence that cancellation upon the death of the payee was an integral part of the loan transaction which the note in part expressed; hence, the note and the letter must be read together. [3] " 'It is a general rule that several papers relating to the same subject-matter and executed as parts of substantially one transaction, are to be construed together as one contract (6 Cal.Jur. 298; 19 Cal.Jur. 832; Civ. Code, 1642; Goodwin v. Nickerson, 51 Cal. 166). We think this rule applies under the circumstances here shown, and that these findings and judgment, insofar as this particular note is concerned, are supported by the evidence, which shows an agreement, on ample consideration and evidenced by a written memorandum, that the principal sum of the note is not to be paid.' " (P. 253.)
 This principle was similarly applied by our Supreme Court as recently as 1950 in Mayers v. Loew's, Inc., 35 Cal.2d 822 [221 P.2d 26]. There, also, two writings were involved, a formal contract and a letter which fixed for certain working conditions commencement dates different from those fixed in the formal contract. The court held, all the justices concurring, that the "consideration of the letter of February 1st in the interpretation of the formal contract is not objectionable on the ground that it tends to vary, modify, or contradict the terms of that contract. Those terms are established by the contract and the letter and not by one to the exclusion of the other." (P. 828.) The rationale of the decision is indicated by the following excerpts: " 'Where two or more written instruments are executed contemporaneously, with reference to the other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given if possible to the purpose to be accomplished.' [Citations.] Since the purpose of the agreements may be ascertained only by reference to each of the documents executed to accomplish that purpose, it was error to *785 exclude any of those documents from consideration." (Pp. 827-828.) "The agreements in the present case are ambiguous and internally inconsistent. ... [Here the court describes the ambiguities and inconsistencies] ... The terms of the agreement furnish no clear answer to these questions. It is thus apparent that the contract is not clear on its face, and under the theory of the parol evidence rule that has been accepted by the majority of this court, evidence of the negotiations of the parties and of surrounding circumstances was admissible for the purpose of determining the meaning of the contractual provisions. (Universal Sales Corp. v. California Press Mfg. Co., 20 Cal.2d 751, 761-762 [128 P.2d 665]; California Canning Peach Growers v. Williams, 11 Cal.2d 221, 228-229 [78 P.2d 1154]; Merkeley v. Fisk, 179 Cal. 748, 757 [178 P. 945]; see Union Oil Co. v. Union Sugar Co., 31 Cal.2d 300, 306, 307 [188 P.2d 470]; Body-Steffner Co. v. Flotill Products, 63 Cal.App.2d 555, 561-562 [147 P.2d 84]; Torrey v. Shea, 29 Cal.App. 313, 316-317 [155 P. 820]; Code Civ. Proc., 1860; Civ. Code, 1647.)" (Pp. 828-829.)
 Similar holdings upon similar facts were also made in the following cases: Torrey v. Shea, supra, 29 Cal.App. 313, 316-319; Spotton v. Dyer, 42 Cal.App. 585, 588 [184 P. 23]; Orton v. Dabney, 82 Cal.App. 281, 287-288 [255 P. 532]; Sintzel v. Wagner, 119 Cal.App. 335, 337 [6 P.2d 293]; Citizens Nat. T. & S. Bank v. Arrowhead Springs Beverage Co., 126 Cal.App. 550, 559 [14 P.2d 821]; Lynch v. Bank of America, 2 Cal.App.2d 214, 223 [37 P.2d 716]; Bergman v. Ornbaun, 33 Cal.App.2d 680, 684 [92 P.2d 654]; Body- Steffner Co. v. Flothill Products, supra, 63 Cal.App.2d 555, 560; Western Helicopter Operations, Inc. v. Nelson, 118 Cal.App.2d 359, 366 [257 P.2d 1025].
 The authorities relied upon by the defendant are not applicable. In Unger v. Goldman, 12 Cal.App.2d 129, 131 [54 P.2d 1126], in Estate of McEuen, 18 Cal.App.2d 180 [63 P.2d 332], and in Ucovich v. Basile, 26 Cal.App.2d 272 [79 P.2d 188], the subsequent writing which purported to modify the contract was not a part of the original transaction and was given without consideration; hence, it was not a part of the original contract and could not qualify as a subsequent modifying contract. In Reid v. Johnson, 85 Cal.App.2d 112 [192 P.2d 106], the several contracts in question represented separate and distinct transactions, did not constitute a single contract, were not interdependent. In Williams v. Silverstein, *786 213 Cal. 269, 276 [2 P.2d 165], an escrow agreement invoked to modify certain promissory notes did not modify them, was not inconsistent with their terms. In each of the following cases only one "writing" was involved, and an attempt made to modify that writing by evidence of a mere oral agreement; McArthur v. Johnson, 216 Cal. 580, 582 [15 P.2d 151]; Alameda County Title Ins. Co. v. Panella, 218 Cal. 510, 513-514 [24 P.2d 163]; Oakland Medical Bldg. Corp. v. Aureguy, 41 Cal.2d 521, 523-524 [261 P.2d 249]; Scatina v. Lawson, 95 Cal.App. 720, 724-726 [273 P. 592]; Seth v. Lew Hing, 125 Cal.App. 729, 736-738 [14 P.2d 537, 15 P.2d 190]; Nourse v. Kovacevich, 42 Cal.App.2d 769, 771 [109 P.2d 999]; Van Fleet-Durkee, Inc. v. Oyster, 91 Cal.App.2d 411, 413-414 [205 P.2d 32]; Security-First Nat. Bank v. Rospaw, 107 Cal.App.2d 220, 223 [237 P.2d 76]; Stafford v. Russell, 117 Cal.App.2d 326, 330 [255 P.2d 814].
 [4] Defendant argues that the April 12th promissory note and the August 10th letter here involved cannot, as a matter of law, be treated as having been "made as parts of substantially one transaction" (Civ. Code, 1642) because not executed on the same date. The code section does not say so, nor does the case law so hold. (Lynch v. Bank of America, supra, 2 Cal.App.2d 214, 223; Sintzel v. Wagner, supra, 119 Cal.App. 335, 337; Body-Steffner Co. v. Flotill Products, supra, 63 Cal.App.2d 555, 560.) In some of the cases, it is true, the rule is expressed in terms of written instruments executed "contemporaneously" or "at the same time" but we do not infer therefrom an intent to limit the rule to cases in which the instruments are executed on the same day or within any arbitrarily prescribed period of time. For example, in Mayers v. Loew's, Inc., supra, 35 Cal.2d 822, 827, the court uses the expression "contemporaneously" in stating the general principle but cites the Lynch and the Body-Steffner Company cases among others, in support of that principle. It is a question of fact in each case. In the instant case the evidence supports the finding that although there was a delay of four months in reducing the contents of the letter to writing, both writings were made as parts of one transaction.
 [5] Defendant contends it is not enough that the letter refers to the promissory note; that the note should also refer to the letter, for the rule to be applicable. That is not the law. The statute makes no such requirement. Cases in which the question has been presented hold it unnecessary for either *787 instrument to refer to the other. (Torrey v. Shea, supra, 29 Cal.App. 313, 316; Spotton v. Dyer, supra, 42 Cal.App. 585, 588; Orton v. Dabney, supra, 82 Cal.App. 281, 288.) In Mayers v. Loew's, Inc., supra, 35 Cal.2d 822, the letter referred to the formal contract but it does not appear that the formal contract referred to the letter.
 [6] Defendant further claims that the statute which allows two or more writings to be "taken together" (Civ. Code, 1642) applies only to writings each of which is a "contract"; hence, that the mere letter in the instant case cannot be considered. The answer is that the code section is in effect the declaration of a common law principle in the statement of which the broader term "written instruments" is acceptably used. That was the term actually used in Mayers v. Loew's, Inc., supra, 35 Cal.2d 822, 827. The word "papers" was used in Western Helicopter Operations, Inc. v. Nelson, supra, 118 Cal.App.2d 359, 366. For a discussion of this point we refer to Citizens Nat. T. & S. Bank v. Arrowhead Springs Beverage Co., supra, 126 Cal.App. 550, 554. In the instant case, the note, the deed of trust, and the letter "taken together" (Civ. Code, 1642) comprised the "contract in writing" (Civ. Code, 1625). The terms of the contract are established by these three instruments, not by one to the exclusion of either of the others.
 The judgment is affirmed.
 Peters, P. J., and Bray, J., concurred.
NOTES
[fn. *] *. It was stipulated that Myrtle had succeeded to any and all interest of James in this property.