[Civ. No. 4629. Fourth Dist. June 5, 1953.]

WESTERN HELICOPTER OPERATIONS, INC. (a Corporation), Respondent, v. MARY NELSON, Appellant.

John A. Willey and Hiram W. Johnson III for Appellant.

Wild, Carlson & Reeve, A. W. Carlson and R. H. Reeve for Respondent.

GRIFFIN, J.— ▮▮▮ Defendant Elmer A. Riley, and defendant and appellant Mary Nelson, were each operating a pilot training school on their respective airports. In June, 1951, they became interested in the purchase of and examined two helicopters and their special equipment owned by plaintiff and respondent Western Helicopter Operations, Inc., in Fresno. They discussed with F. S. Moulton, Jr., secretary and manager of plaintiff corporation, the terms of sale, and tentatively agreed upon a price of $42,000, with a down payment of 10 per cent and the balance payable in 30 days. About four days later Riley phoned plaintiff and said that he and Mrs. Nelson had decided to purchase the ships. Plaintiff's attorney drew up a letter of offering, reading in part:

"June 29, 1951.

"Western Helicopter Operations, Inc.

P. O. Box 1346

Fresno, California

"Gentlemen:

"We hereby offer to buy from you those two. . . Helicopters, . . . for the sum of $42,000.00 in cash, and hand you herewith as a deposit thereon the sum of $4,200.00.

"Said deposit is to be applied to the purchase price, and we agree to pay to you the balance of said purchase price in the sum of $37,800.00 by certified check in your favor at Fresno, California, on or before the 29 day of July, 1951. . . .

"If the balance of said purchase price is not so paid on or before said date, our rights hereunder will thereupon cease and terminate, and you shall be entitled to retain said deposit in consideration of your acceptance of this offer.

"We agree to accept delivery of all of said property at Hammer Field, Fresno County, California, at the time of the payment of the balance of said purchase price, as aforesaid, and delivery thereof to us is to be made by you at that time and place.

"We have examined all of said property and are satisfied with the condition thereof . . .

"Title to all of said property is to pass to us or our nominee at the time specified for delivery thereof to us above mentioned.

"If the foregoing conforms with your understanding of

our agreements above set forth, please endorse and return to us a copy hereof for our files.

"_____

"ELMER A. RILEY
El Monte, California

"_____

"MARY NELSON
Palm Springs, California

"The above and foregoing is hereby approved and agreed upon.

"WESTERN HELICOPTER OPERATIONS, INC.

By ———————————————— "

They agreed to meet at El Monte to sign the necessary agreement. Appellant did not appear. At that meeting, according to plaintiff's testimony, Riley indicated that the agreement was in accordance with the ideas expressed by defendants. Riley testified, however, that it was not in accordance with his ideas because he was only interested in an option to purchase them. Moulton then testified that after some period Riley phoned to appellant at Palm Springs and explained to her the letter of offering as to the price and terms therein indicated; that Riley asked Mrs. Nelson if that was satisfactory and she said she did not have the $4,200 in the bank at that time but suggested a smaller down payment, i.e., $1,000, to keep the deal open for a few days; that this arrangement was agreed upon and he drew up an additional agreement (Exhibit 1):

"WESTERN HELICOPTER OPERATIONS, INC.
"P.O. 1346, FRESNO, CALIFORNIA

"June 15, 1951

"Miss Mary Nelson
"Elmer A. Riley
"% Riley Flying Service, Inc.
 El Monte Airport
 El Monte, California

"Gentlemen:

"In consideration of $1000.00, receipt of which is acknowledged, Western Helicopter Operations, Inc. agrees to hold for your option those certain Bell Model 470 helicopters,

N138B and N 194B and their spare parts and special tools as shown on the attached lists until June 29, 1951. At that time Elmer A. Riley and Mary Nelson agree to pay the balance of the option price as described in the attached letter which shall become a part of this agreement.

 "WESTERN HELICOPTER OPERATIONS, INC.
 "FERRIS S. MOULTON, JR.
 "Sec.Treas.

"The above and foregoing is hereby approved and agreed upon.

 "ELMER A. RILEY."

That he signed the original and two copies on behalf of plaintiff company and Riley signed them; that the original and one signed copy attached to the offering letter with the date of June 29 inserted therein were left with defendant Riley; that Riley gave him a check for $1,000; that on June 28th appellant phoned him and said she was signing the papers and sending him a check that day for the balance of the down payment on the sale of the ships; that on June 29, he received a letter signed by her (Exhibit 2):

"S. F. Moulton
"Western Helicopter Operations
P. O. Box 1346
Fresno, California

"Dear Bud:

"Enclosed please find a check for $3500.00 for next part of payment on the helicopters we are purchasing from you. I am taking over the financing of this deal and Elmer will come back into it if we get into a training operation which is our ultimate goal. In the meantime would you please send me a receipt for above check and a signed copy of option agreement plus a notation on same that second part of agreement has been fulfilled. I will proceed and hope to get everything squared away before the July 29 deadline but certainly by then. I have every intention of completing our deal and have made all the necessary arrangements. I would appreciate your sending me also the names and addresses of any pilots who are satisfactory to the Forest Service under their regulations and you might also tell Nick that I may put one of the ships on a Forest Service or other contract while retaining the second one to get our school going as I anticipate it will take a little longer than we had

hoped to get our various approvals. If Nick would be interested in such a job you might ask him to drop me a line.

"Very best wishes
"Mary B. Nelson";

that enclosed was a check for $3,500; that in that conversation she indicated to him that Riley did not have his finances in order to be able to complete the down payment at that time; that she was mailing a check to cover it and she and Riley would get together at a later date and make their own arrangements; that agents of a finance company would look at the equipment in a few days; that he informed her they had been there that day; that upon receipt of her letter (Exhibit 2) he, on July 6, 1951, forwarded her a signed copy of the agreement with a request that she sign and return the one left with Riley and containing a note acknowledging receipt of "$4500 to be applied on the purchase price as named herein" (Exhibit 5).

Exhibit 4 is an assignment to Mary Nelson dated July 11, 1951, of any interest of Elmer A. Riley "in attached contract dated June 15, 1951."

Moulton then testified that on July 6, he called appellant to find out why she had not sent back the executed copies of the letter of offering and to tell her he had received her check for $3,500 balance of the down payment; that she told him they were with the finance company and she would be in Fresno within the next day or two and execute them.

On July 8th appellant wrote plaintiff (Exhibit 7) that she had discussed her transaction with an attorney and he advised that since Riley had signed the original option a release should be secured from him before "going into the second part of our deal"; that her attorney informed her she should not have made the payment of $3,500 until this was done; that he recommended that payment of that check be stopped at the bank until his release was obtained and that she did so; that she would then send a new check, a copy of the release, and a new agreement in which he would not be involved; and that she now had the release. She stated: "Inasmuch as this operation has been bogged down through no fault of yours I hesitate to ask if it would be possible to make the purchase agreement extend 30 days from the 15 of July if I send you the signed agreement and check and release by that date? My reason for asking this is I know that summer is a terrible time to get things done inasmuch as people are on vacations, taking long weekends and the like and I do not want to be pressed for time to get every-

thing buttoned up. It is my belief that things should be settled long before that but I know how things go. If this is agreeable would you be so kind as to send me a wire. . . . Please accept my abject apologies for this being allowed to get into this state of confusion. . . . (Signed) Mary Nelson."

Moulton then testified that on July 25th, appellant came to Fresno and brought some form of written agreement prepared by her attorney (Exhibit A) which changed the terms of the original agreement in many respects and provided for some form of an escrow; that a check for $3,200 accompanied this agreement and it was made payable to the escrow agent and was attached to the assignment mentioned in Exhibit 4; that he turned this proposed agreement over to plaintiff's attorney, who advised against signing it; that on August 1st he wrote appellant and returned her proposed purchase agreement; that some oral negotiations thereafter were attempted; that he (Moulton) informed her that he had other offers for the purchase of those helicopters and wanted to know what to do about her contract with the company; that on August 27, 1951, Moulton received her letter (Exhibit D) reciting:

"Dear Bud:

"Pursuant to our telephone conversation of yesterday I am willing to go through with our deal on the basis of a total price of $42,000.00 for the two ships total price, subject to the escrow discussed and drawn up being executed and subject to payment of $36,000.00 at close of escrow which would include $4000.00 already paid, $3200.00 check held by you and which would leave a balance of $31,800.00 and your taking my note for six months for $6000.00 at 5% int.

"This deal could be consummated by 15 September.

"If you have someone presently willing and able to take on the ships at $42,000.00 or thereabouts on an immediate basis it would be quite agreeable with me inasmuch as I would simply put the ships up for resale inasmuch as some of my other projects are going very well and the demands on my time would be such that I could not operate the ships competently or intelligently during the next six months. I want you to know however that I am most willing not to let you down and that I will, having made the arrangements with PF, go ahead rather than have you have to struggle with the sale of these ships.

"Please accept my apologies that there was any confusion on this deal and I trust that however you determine to act

will be the best possible way for you. I have no intention of dropping my interest in operating helicopters whatever happens as I have great confidence in the future of them. . . .

"Mary Nelson."

On August 24th appellant told Moulton she definitely would not complete the deal. He then looked for someone to purchase the ships and due to the seasonal drop in the market he sold them for $32,000. Plaintiff then instituted this action for damages for the difference in price agreed upon by appellant and that obtained by plaintiff.

The court found generally that on the 15th of June, 1951, in consideration of $1,000 paid by defendants, plaintiff did, in writing, offer to sell the ships described at any time up to and including July 29, 1951, for the sum of $42,000, to be paid by defendants to plaintiffs at Fresno as follows: $4,200 on or before July 29, 1951, subject to credit thereon of the sum of $1,000, and the remaining $37,800 upon the delivery of said property not later than July 29th; that said option was exercised by appellant Mary Nelson alone and on her own behalf on the 29th of June; that such exercise of option was without the knowledge or consent of defendant Riley; that said option was exercised in writing by her on June 29, 1951, enclosing her check for $3,500; that plaintiff accepted the check as part payment of the purchase price and then recognized the exercise of the option by appellant Mary Nelson by acknowledging the receipt thereof in accordance with her written request; that Riley assigned to Mary Nelson his interest in the option agreement and offer of purchase and sale of said property; that plaintiff demanded of defendants the payments due and performance of the balance of the total purchase price; that it was ready, able and willing to perform all the terms of the agreement; that appellant Nelson failed to pay the amounts due thereunder and refused to carry out her obligations under said contract or accept said property; that plaintiff sold the property for $32,395, the fair and reasonable market value thereof as of that date; that by reason of the foregoing plaintiff was damaged by appellant's refusal to fulfill the agreement in the sum of $8,605. It was then found that defendant Elmer A. Riley was not liable thereunder. Judgment was entered against appellant Mary Nelson accordingly.

On her appeal she challenges first (a) the sufficiency of the evidence to support the finding that a contract came into being between plaintiff and appellant on June 29, 1951; and

(b) that appellant Nelson had acquired knowledge of the terms of the option at the time she attempted to extend it. Second, it is argued that the history of events does not indicate that a final agreement was ever presented, accepted or settled. She cites such cases as *Warner Bros. Pictures, Inc.* v. *Brodel,* 31 Cal.2d 766 [192 P.2d 949, 3 A.L.R.2d 691]; *Four Oil Co.* v. *United Oil Producers,* 145 Cal. 623 [79 P. 366, 68 L.R.A. 226]; *Alexander* v. *Bosworth,* 26 Cal.App. 589 [147 P. 607]; *Spinney* v. *Downing,* 108 Cal. 666 [41 P. 797]; *Store Properties, Inc.* v. *Neal,* 72 Cal.App.2d 112 [164 P.2d 38]; *Tewksbury* v. *O'Connell,* 21 Cal. 60; *Anthony Macaroni Co.* v. *Nunziato,* 5 Cal.App.2d 588 [43 P.2d 315], and *White* v. *Bank of Hanford,* 148 Cal. 552 [83 P. 698]. And third, it is contended that in the event appellant Nelson did exercise the second part of the June 15th option agreement, by the terms of the June 29th letter attached thereto, the limit of damages could not exceed $3,200, being the balance due on the option price. (Citing *Beckwith-Anderson Land Co.* v. *Allison,* 26 Cal.App. 473 [147 P. 482]; and *Biescar* v. *Pratt,* 4 Cal.App. 288 [87 P. 1101].)

 It is true, as pointed out by appellant, that when there are several papers relating to the same subject, and executed as part of one transaction, they are to be construed together as one contract and effect should be given, if possible, to the purpose intended to be accomplished. (*Symonds* v. *Sherman,* 219 Cal. 249 [26 P.2d 293]; Civ. Code, § 1642; *Basile* v. *California Packing Corp.,* 25 F.2d 576.)

 A distinction between a contract to sell and purchase and an option to purchase is that the former creates a mutual obligation on the one party to sell and on the other to purchase, while the latter merely gives a right to purchase, within a limited time, without imposing any obligation to purchase. (*Brickell* v. *Atlas Assur. Co., Ltd.,* 10 Cal. App. 17 [101 P. 16].)

While there is no finding of agency or joint venture as between appellant Nelson and defendant Riley, it fairly appears that Riley did bind plaintiff to sell to him the two ships, and he had a definite interest in that option and probably could have enforced it as against plaintiff either individually, or as an authorized agent of appellant Nelson, or as one of the joint venturers in the transaction. (*Kurtz* v. *Forquer,* 94 Cal. 91 [29 P. 413]; *Anthony Macaroni Co.* v. *Nunziato, supra,* p. 590; 6 Cal.Jur. 233, §153.) Under the circumstances then, if appellant took an assignment of Riley's

interest, with plaintiff's knowledge and consent, she undoubtedly acquired any right he had in and to that option.

The main question is, did such option ripen into an executed agreement whereby plaintiff was obligated to sell and appellant was obligated to purchase the two ships upon compliance with the terms of the agreement? It appears to us that the trial court was justified in finding that appellant had knowledge of the terms of the option, at least at the time she purportedly exercised it. Appellant did not, at the trial, attempt to contradict or deny this fact. She advised plaintiff on June 28, 1951, she was signing the agreement, according to its terms and was sending a check for the balance of the down payment. She was apprised of its terms and conditions and she paid the amount she believed to be due thereunder, as reflected in her signed letter of June 29th. This agreement contained all of the terms of the sale, as found by the court, and was attached to and considered a part of the option agreed upon.

It is well settled that before a written instrument is effective it need not necessarily be signed on the instrument itself by the parties to be charged. (Civ. Code, § 1642; *Frost* v. *Alward,* 176 Cal. 691 [169 P. 379]; 6 Cal.Jur. pp. 298-299, § 181, and cases cited.)

It does appear that after appellant apparently accepted the terms of plaintiff's offering agreement of June 29th, and forwarded the check, she consulted an attorney. Thereafter, she expressed a desire to handle the transaction in another manner. However, this desire appears to be only a request by her for permission to modify the original agreement to that extent. This request was not granted and plaintiff stood on the original agreement as accepted by appellant in the first instance.

We conclude that the trial court was justified in finding that a valid agreement of sale and purchase between the parties was effected and appellant breached the terms thereof to plaintiff's damage. This conclusion is fortified by the fact that sometime after the date on which appellant had to exercise the option, she must have believed she acquired the right to purchase those machines under the agreement because, in her letter of August 27th (Exhibit D) she was willing to relinquish that right if plaintiff found a purchaser for $42,000 or thereabouts. She also testified that on August 27th she told Moulton if someone else put up the money "why I would release them."

The basis for the amount of damages awarded is the difference between the agreed price of $42,000 and the $34,000 for which they were sold, after deducting the $1,000 payment, which difference totals $9,000. There was evidence that plaintiff sold some of the extra equipment to another party for a small sum and that that item was allowed as an offset, leaving a balance of $8,605 due under the judgment. Since the amount allowed was found to be due for damages for breach of the contract of purchase and not for failure to exercise the option, defendant's third contention is untenable. (*Royer* v. *Carter*, 37 Cal.2d 544 [233 P.2d 539]; *Better Food Markets, Inc.* v. *American Dist. Tel. Co.*, [1]40 Cal.2d 179 [253 P.2d 10]; Civ. Code, § 3300.)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

[1]Advance Report Citation: 40 A.C. 183.