Henry **BORREGO** and Delfino Borrego, Plaintiffs,

v.

**UNITED STATES of America, et al., Defendants.**

Civ. No. 83-0788 HB.

United States District Court, D. New Mexico.

Nov. 23, 1983.

James V. Noble, Jr., Ruben Rodriguez, Santa Fe, N.M., for plaintiffs.

William L. Lutz, U.S. Atty., Sandra M. Kemrer, Asst. U.S. Atty., Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION

BRATTON, Chief Judge.

This cause came before the Court for hearing on the merits on October 13, 1983. The Court has considered the evidence presented at that hearing, the evidence presented at the May 16, 1983 hearing in regard to plaintiffs' request for a Temporary Restraining Order, and the various memoranda and authorities submitted by the parties. The Court finds for the defendants, for the reasons set forth below.

Plaintiffs, Henry Borrego and Delfino Borrego, are permittees under ten year term grazing permits issued by the U.S. Forest Service for the grazing of cattle on the Oso-Vallecitos Grazing Allotment of the Santa Fe National Forest. The current ten year term grazing permit of each of the plaintiffs was issued in 1975 and superseded earlier permits issued to the plaintiffs. Both plaintiffs have grazed cattle under permit on the Oso-Vallecitos Allotment for a number of years.

Plaintiffs claim that on April 5, 1983, the Forest Service wrongfully modified the terms of plaintiffs' grazing permits to include a provision that has been called the "bull rule." Plaintiffs refused to comply with the "bull rule" provision in their grazing permits and the Forest Service denied them permission to graze their cattle on the National Forest grazing allotment for the 1983 grazing season.

The "bull rule" requires that permittees who are not members of the Rio Grande-Rio Chama Grazing Association (the Association) must place one bull on the allotment for each 25 cows placed by the permittee on the allotment. Association members, on the other hand, pay an annual "bull fee" to the Association for the pur-

chase, grazing fees, and related expenses for maintaining a number of Association bulls. Association bulls are not included within the number of cattle an individual member-permittee is allowed to place on the grazing allotment under the terms of his permit; rather, a separate permit has been issued to the Association as a whole for the grazing of Association bulls on the allotment. Nonmembers of the Association are not permitted to pay "bull fees" to the Association under the terms of the new "bull rule." Nonmembers must provide their own bulls, and those bulls are counted within the total number of cattle allowed to be grazed by each nonmember permittee under the terms of his permit.

The Rio Grande-Rio Chama Grazing Association is an organization composed of a majority of the permittees on the Oso-Vallecitos, Polvadera and Erosion Allotments. The Association was established in 1973 when a constitution and bylaws were promulgated, which were accepted and approved by the Forest Supervisor of the Santa Fe National Forest. Since 1973, the Association has been recognized by the Forest Supervisor as a local livestock association as provided for in 36 C.F.R. § 222.7. 36 C.F.R. § 222.7 provides that the Forest Service is authorized to "recognize, cooperate with, and assist local livestock associations in the management of the livestock and range resources on a single range allotment ... on which the members' livestock are permitted to graze."

The "bull rule" at issue herein was drafted by the Association and proposed to the Forest Supervisor for inclusion in the grazing permits for the Polvadera, Oso-Vallecitos, and Erosion Allotments. On April 5, 1983, the Forest Supervisor approved the proposed rule, adopted it, and included it as a special provision and requirement in each of the term grazing permits issued for the allotments.

The Forest Service contends that 36 C.F.R. § 222.7, and Forest Service policy as set forth in the Forest Service Manual § 2251.17, allow the Forest Service to adopt and include as provisions in grazing permits special rules proposed by local grazing associations. For many years, the Forest Service has adopted local grazing association special rules, providing for payment of maintenance, improvement, and salt fees by all permittees to local associations. Indeed, the Grazing Permit printed form used by the Forest Service contains a space designated specifically for the inclusion of "Approved Special Rules of Local Associations."

Plaintiffs assert that the imposition of this "bull rule" by the Forest Service is unconstitutional for several reasons. First, they assert that imposition of the rule exceeds the authority delegated by Congress to the Secretary of Agriculture in regard to supervision and control of the National Forests. Second, plaintiffs assert that the Secretary of Agriculture has not delegated to the Forest Supervisor authority to impose such a rule. Plaintiffs further maintain that the Forest Supervisor's adoption of this rule was arbitrary, capricious, and not rationally related to any legitimate purpose. Plaintiffs maintain that the Forest Supervisor merely "rubber stamped" the rule, which was promulgated by a private association, constituting a violation of due process. Finally, plaintiffs assert that the rule was drafted specifically to discriminate against them as nonmembers of the Association, that the rule in fact discriminates against nonmembers, and that such discrimination violates plaintiffs' substantive due process and equal protection rights.

Plaintiffs' Complaint names as defendants the United States, the Secretary of Agriculture, the Forest Supervisor of the Santa Fe National Forest, and the District Forest Ranger for the Espanola District, Santa Fe National Forest. Plaintiffs request that the Court declare the "bull rule" unconstitutional, order defendants to refrain from including the "bull rule" as a condition in the grazing permits, and order the defendants to allow plaintiffs to graze their cattle on the grazing allotments.

The specific circumstances underlying plaintiffs' claim in this case arise from a

long-standing dispute between these plaintiffs, the Association, and the Forest Service. From the 1930's until 1973, the U.S. governmental entities that administered grazing on these allotments had recognized and cooperated with a local livestock organization known as the Rio Grande-Rio Chama Cooperative Association (the Cooperative). Plaintiffs were members of the Cooperative. The Cooperative served the same function as the present Association: an organization of local livestock grazers for the pooling of assets and the joint, cooperative management of livestock and range resources. The Cooperative had approximately 100 members, many of whom did not possess permits to graze cattle on National Forest land.

In 1973, at the urging of the Forest Service, the Association was formed by some of the members of the Cooperative. The Forest Service felt, and a majority of the permittees on the allotments agreed, that the local livestock association recognized by the Forest Service should be composed solely of individuals who possessed National Forest grazing permits. It was felt that such an organization could address itself more specifically to National Forest grazing concerns, rather than to the entire range, both government and private, that had been the Cooperative's area of interest. There are now approximately thirty permittees on the allotments in question, approximately twenty-four of whom are members of the Association. Plaintiffs are not members of the Association.

Since 1973, plaintiffs have objected to Forest Service recognition of the Association, and to Forest Service withdrawal of recognition of the Cooperative. Plaintiff Henry Borrego also claims that the Association has usurped certain Cooperative-owned bulls in which Mr. Borrego claims an interest, for which he has not been compensated. Plaintiffs have presented much evidence in this case relating to their disputes with the Association. Those matters are not at issue before this Court, however. The issue of the legitimacy of the Association was resolved in *Vigil v. Sanchez*, Civ. No. 12315, New Mexico District Court for Rio Arriba County (June 4, 1974). Mr. Henry Borrego's claims relating to an interest in certain bulls is now pending before the New Mexico District Court for Bernalillo County, *New Mexico Livestock Board v. Borrego*, Civ. 78–02874. The cause before this Court concerns only the legality of the Forest Service's adoption of the "bull rule."

■ Plaintiffs claim that adoption of the "bull rule" exceeded the authority granted to the Secretary of Agriculture by Congress regarding regulation of the National Forests. 16 U.S.C. § 551 grants to the Secretary of Agriculture power to make and promulgate rules and regulations concerning the "occupancy and use" of national forests. 16 U.S.C. § 580*l* States,

> The Secretary of Agriculture in regulating grazing on the National Forests ... is authorized, *upon such terms and conditions as he may deem proper,* to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof ...

(emphasis added). The "bull rule" at issue here, included as a condition within grazing permits, clearly concerns the "occupancy and use" of National Forest land. "Broad authority is conferred by 16 U.S.C. §§ 497 and 551 for the Secretary to issue use permits under such regulations as he may make and upon such terms and conditions as he may deem proper." *Sabin v. Butz,* 515 F.2d 1061, 1066 (10th Cir.1975); *see also, United States v. Hymans,* 463 F.2d 615 (10th Cir.1972). Authority therefore exists in the Secretary of Agriculture to impose the "bull rule" as a condition for plaintiffs' use of the National Forest.

36 C.F.R. § 222.1(a) contains a delegation of authority by the Secretary of Agriculture to the Chief, Forest Service to "permit and regulate the grazing use of all kinds and classes of livestock on all National Forest System lands." Section 222.1(a) states further that the Chief, Forest Service may redelegate this authority. Thus, the Secretary of Agriculture has promulgated a regulation delegating broad power

to the Chief, Forest Service to regulate grazing on National Forest land.

In turn, the Chief, Forest Service has promulgated the Forest Service Manual (FSM). In pertinent part, the FSM delegates to the Forest Supervisor responsibility for issuing all grazing and livestock use permits, FSM § 2204.31(5), and recognizing local livestock associations and approving special rules for livestock associations, FSM § 2204.31(19). Broad power therefore has been delegated by the Chief, Forest Service to the Forest Supervisor to issue grazing permits and to regulate use of the National Forest under his supervision.

■ 36 C.F.R. § 222.7 also grants authority to the Chief, Forest Service to "recognize, cooperate with, and assist local livestock associations in the management of the livestock and range resources" on an allotment. One of the purposes stated in § 222.7 is to provide the means for associations to formulate "special rules needed to ensure proper resource management." 36 C.F.R. § 222.7(2)(v). The Forest Service Manual directs the Forest Supervisor to insert, in Part 3 of a Grazing Permit, "special rules for management of the range adopted by local livestock associations which have been approved by the Forest Supervisor." FSM § 2231.43b. In the case at bar, the Forest Supervisor acted in accordance with the Forest Service Manual when he included the "bull rule" as a special provision in Part 3 of each grazing permit for these allotments.

In summary, authority was granted by Congress to the Secretary of Agriculture to regulate occupancy and use of National Forests. The Secretary has delegated this authority to the Chief, Forest Service, who, in turn, redelegated authority to the Forest Supervisor. The Forest Supervisor in this case did not exceed his authority in imposing the "bull rule," proposed by the local grazing association, as a special condition in plaintiffs' grazing permits.

■ Moreover, it is well settled that when the construction of a statute or administrative regulation is in issue, the Court must accord great deference to the interpretation given to the statute or regulation by the agency to which it is addressed. *E.g. Mountain States Telephone & Telegraph Co. v. United States*, 499 F.2d 611 (Ct.Cl.1974); *Brennan v. Occupational Safety and Health Comm.*, 513 F.2d 553 (10th Cir.1975). "[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). In the case at bar, the Forest Service has interpreted 36 C.F.R. § 222.7 to allow for the inclusion within grazing permits of special rules proposed by local grazing associations and approved by the Forest Supervisor. Such an interpretation is not plainly erroneous nor inconsistent with the regulation. The policy underlying § 222.7 is to further cooperation between the Forest Service and grazing permittees in the management and control of the range and the livestock herds grazing thereon. That policy is furthered by allowing permittees to draft and propose to the Forest Service rules governing the joint use of the range which the majority of permittees believe will be beneficial to all. The "bull rule" is such a rule. The Forest Supervisor has authority to adopt the rule and include it as a permit condition so long as the rule is rational and furthers a legitimate purpose.

■ Plaintiffs contend that the "bull rule" serves no legitimate purpose but instead was advanced by the Association for the illegitimate purpose of singling out these plaintiffs for discriminatory treatment. Plaintiffs contend that the Forest Supervisor "rubber stamped" the proposed rule without considering whether it was necessary or valuable. The evidence presented at both the Temporary Restraining Order hearing and the hearing on the merits compels the Court to conclude that the "bull rule" is rationally related to legitimate purposes. The Forest Service did consider the bases for the proposed rule prior to approving and adopting it. The Forest Service found the "bull rule" to be

an appropriate permit condition which would advance the goals of equitable use and cooperative management of National Forest range land.

Mr. William Gore, the Range Staff Officer for the Santa Fe National Forest, testified at both the T.R.O. hearing and the hearing on the merits. Mr. Gore described his position as one of providing "review and advice" to the Forest Supervisor, Mr. James Perry. Mr. Gore testified that the "bull rule" has several purposes. First, the rule enables the permittees, in cooperation with the Forest Service, to maintain and improve the quality of the beef herd as a whole. Cattle owned by individual permittees intermingle while grazing on the allotment. There exists, in fact, one herd composed of cattle owned by individual permittees. Plaintiffs assert that Mr. Henry Borrego's cattle are segregated from those of other permittees while on the range. The Court finds, however, that a likelihood exists that Association bulls will "cover" Mr. Borrego's cows, and that any bulls he places on the allotment will "cover" the cows of other permittees. The "bull rule" includes the requirement that all bulls meet certain age and breed standards, and that they be inspected by the Association prior to placement on the range. The Court finds that the "bull rule" ensures both that the number of bulls on the whole range will be sufficient to produce a high calf crop for the herd as a whole, and that the quality of the herd will be maintained. These goals are legitimate concerns of the Forest Service in promoting the most productive use of National Forest range resources for the benefit of the permittees and the public.

Mr. Gore also testified that the "bull rule" advances equity among the permittees. Each permittee should carry his share of the burden of providing and maintaining the bull herd. Nonmembers of the Association, who have not fully contributed to the expense and effort of maintaining the Association bull herd, must provide their own bulls. Such a rule is rationally related to proper management of the National Forest range.

Finally, Mr. Gore testified that the "bull rule" fosters cooperation among the permittees and between permittees and the Forest Service. As evidenced by 36 C.F.R. § 222.7, the Secretary of Agriculture has concluded that local livestock associations are beneficial to the management of National Forest allotments. Such associations facilitate organized range and herd management planning and communication among permittees and with the Forest Service. Mr. Gore testified that if the "bull rule" were not enforced, the Association here would likely dissolve. This would not be in the best interests of the Forest Service, the Association members, or the public.

As plaintiffs point out, nonmembers of the Association are disadvantaged in that their bulls are included within the number of cattle stated in their permits, while Association bulls are covered by a separate Association permit. However, the Forest Service may legitimately choose to encourage permittees to become members of the Association in order to foster the benefits the Association provides in range management. The "bull rule's" distinction in treatment between members and nonmembers is rationally related to the legitimate purpose of encouraging Association membership. Plaintiffs are not members of a "suspect classification" nor does the "bull rule" infringe upon a fundamental right. Therefore, the "bull rule" distinction in treatment does not violate plaintiffs' equal protection or substantive due process rights.

Plaintiffs contend that the Forest Supervisor violated plaintiffs' right to procedural due process by merely "rubber stamping" the rule. They contend that the Forest Supervisor abdicated his responsibility to control grazing on the allotment by allowing a private association to promulgate a Forest Service rule that would then apply to plaintiffs. The Court finds, however, that the Forest Supervisor, and the personnel under his supervision, considered the merits of the proposed "bull rule" prior to adopting it.

Mr. Gore testified that the Forest Service considered the rule's effect on nonmembers of the Association prior to adopting the rule. Mr. James Perry, the Forest Supervisor, testified that he reviewed the rule along with Mr. Gore when it was presented to the Forest Service by the Association. Mr. Perry testified that he found the rule compatible with the rest of the grazing permit, that it met his technical review, and that he felt it met the needs and desires of the majority of the permittees at the time he approved it. The Court holds that these procedures for approving and adopting the "bull rule" were adequate, especially in light of the evidence regarding the rule's beneficial effects.

As a final issue, plaintiffs contend in their post-trial brief that 36 C.F.R. § 222.4(a)(8) requires one year's notice be given of any modification of the terms of a grazing permit. The "bull rule" at issue was adopted on April 5, 1983, to apply to the 1983 grazing season which began on May 1, 1983. Plaintiffs were not given one year's notice of the modification. However, § 222.4(a)(8) applies only to modifications necessitated by resource conditions, or modifications requested by the permittee himself. Section 222.4(a)(7), on the other hand, allows the Forest Service to "[m]odify the terms and conditions of a permit to conform to current situations brought about by ... other management needs." No notice requirement exists for such modifications. The adoption of the "bull rule" fell within § 222.4(a)(7) so that one year's notice was not required.

In summary, the Forest Supervisor had authority to impose the "bull rule" as a condition in plaintiffs' grazing permits. The rule is rationally related to legitimate Forest Service objectives. The Forest Supervisor did not impose the rule arbitrarily, nor without employing adequate supervisory procedures. The "bull rule" is constitutional, and the acts of the Forest Service at issue herein have not violated plaintiffs' rights to due process or equal protection of the law. A judgment will be entered for the defendants in this cause.