The **GREAT AMERICAN HOUSEBOAT COMPANY, a California corporation,** Plaintiff-Appellant,

v.

The **UNITED STATES of America, (U.S. Forest Service),** Defendant-Appellee.

No. 84–2434.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1985.

Decided Jan. 9, 1986.

Joshua Tropper, Gaston, Snow, Ely & Bartlett, Palo Alto, Cal., for plaintiff-appellant.

Sandra L. Willis, Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee.

Before SKOPIL, FLETCHER, and WIGGINS, Circuit Judges.

SKOPIL, Circuit Judge:

This case arises from the United States Forest Service's ("Forest Service") refusal to grant Great American Houseboat Company's ("GAHC") applications for permits to operate eight houseboats on Shasta Lake. GAHC brought this action for declaratory and injunctive relief alleging the Forest Service's permit regulations and conditions are unconstitutionally vague and were applied to them in a discriminatory manner in violation of the equal protection clause. GAHC also alleged that the Forest Service revised its application form and houseboat use permit conditions without appropriate authority. The Forest Service's Rule 41(b) motion for involuntary dismissal was granted following a trial to the court. GAHC appeals. We affirm.

## FACTS AND PROCEEDINGS BELOW

GAHC is a California corporation in the business of managing and selling houseboats, including timeshare/interval ownership houseboat programs. GAHC sold eight houseboats to eight individuals ("owner-investors"), who made their own arrangements for financing. Each owner-investor entered into a houseboat lease arrangement, leasing the houseboats back to GAHC for a five-year term. GAHC then created a partnership which transferred timeshares of its interest in the houseboats to individual users ("interval owners"). GAHC planned to transfer seventeen total timeshares in the houseboats to individual users who would be allotted two weeks of use per season.

GAHC's timeshare program was structured to provide the owner-investor a substantial tax benefit. The lease agreement provided that GAHC could at the end of the lease, upon 180 days' prior written notice, exercise an option to renew the lease, purchase the houseboat, or return the houseboat to the owner-investor. The options to purchase the houseboats were revocable by the owner-investors. At the time it applied for permits, GAHC had not exercised the revocable options to purchase.

During the five-year lease arrangement, title and registration to the houseboats were maintained in the name of the lessor (owner-investor). All rents or lease payments received by GAHC were deposited in escrow. Distributions from escrow were made according to each owner-investor's prearranged payment schedule. Some owner-investors personally received the payments while others had payments made

to the banks holding the liens on the houseboats.

Regarding the sale or lease of timeshare interests, each interval owner signed a partnership agreement and an addendum to that agreement stating that he or she was one of several partners who owned the use and enjoyment of the houseboat. GAHC provided the financing for each of the interval owners' purchase of a timeshare interest. Payments received by GAHC from the interval owners were deposited into the escrow set up to receive rent or lease payments from GAHC to the owner-investor. The payments from the interval owners were used in large part to pay off the owner-investors.

In November 1982 the Forest Service became aware of GAHC's timeshare plan and advised it against proceeding with the plan until the Forest Service had an opportunity to review and promulgate a policy on multiple ownership of houseboats. The Forest Service was concerned that GAHC's timeshare plan was a commercial venture forbidden by the private permit system. In that same month the Forest Service's District Ranger established a moratorium on the issuance of all houseboat permits until a policy on multiple ownership houseboat programs could be formulated.

In January 1983, during the moratorium on permit issuance, District Ranger Fitch advised GAHC that its timeshare proposal was being evaluated by counsel to determine compliance with the private permit system. Ranger Fitch also expressed concern that GAHC continued to represent to the public that its timeshare program was in complete compliance with the Forest Service's permit system.

On February 11, 1983 GAHC representatives met with Forest Service personnel to discuss GAHC's timeshare program. Forest Service personnel made no representations as to whether GAHC's program was in compliance with existing houseboat use permit regulations. Shortly thereafter, GAHC was advised that a revised application form had been approved and that revised conditions embodying Forest Service policy on multiple ownership had been promulgated. GAHC was advised that it should comply with several conditions before a houseboat permit could be granted. GAHC did not supply all the information requested nor did it comply with all the conditions.

On April 22, 1983 the District Ranger issued a decision letter stating that no permit would be issued to a new multiple use houseboat until the anticipated use of the houseboat was determined. The District Ranger reaffirmed Forest Service policy prohibiting commercial use of houseboats through the sale of time alone without evidence of proportionate ownership. On that same day the District Ranger lifted the moratorium for issuing permits and began processing all applications. GAHC had submitted applications for eight separate owners.[1] The registered owners were the various owner-investors. The legal owners of the houseboats were the various banks or lienholders. Some of the registered owners indicated that they were not members of the interval-owner partnership created by GAHC for sale of timeshare interests. Some of the registered owners did not know whether or not they were members of that partnership, and some of the registered owners indicated that they did not use. their houseboats, but purchased those houseboats for the purpose of renting them.

The Forest Service rejected GAHC's permit applications on the basis of the conditions embodying the commercial use ban

---

1. GAHC, acting as an agent, submitted application for permits for the following eight owner-investors: (1) Larry Milliron, No. 005780982; (2) James Reynolds, No. 005760982; (3) Carl and Helen Biorn, No. 006041182; (4) Robert and Stephanie Biorn, No. 005981182; (5) Dr. Morton and Julia Maser, No. 005941182; (6) John Levy, No. 005931182; (7) Futile Invest- ments and Robert Savely, No. 006011182; and (8) Patrick McClennen, No. 005971182. Four of the owner-investors, Carl Biorn, John Levy, Dr. Morton and Julia Maser, and Robert Savely, submitted applications for single-ownership permits despite their participation in GAHC's multiple ownership program.

and the Forest Service policy with respect to multiple ownership of houseboats. Because GAHC had not been issued permits, it was notified that its houseboats would be impounded unless removed from the Lake. GAHC filed its complaint in this matter seeking to prevent that action. The district court denied plaintiff's application for preliminary injunctive relief. Following a trial on the merits, the court granted the defendant's Rule 41(b) motion for involuntary dismissal.

## FOREST SERVICE PERMIT SYSTEM

Congress has granted the Secretary of Agriculture the authority to manage the recreational resources at the Whiskeytown-Shasta-Trinity National Recreational Area. 16 U.S.C. §§ 460q–460q–9 (1982). The Secretary has duly delegated his authority to the Forest Service. 29 Fed.Reg. 16,210 (Dec. 3, 1964). Shasta Lake is part of this National Recreational Area. All uses of National Recreational Area land or resources must be authorized. 36 C.F.R. § 251.50 (1984). Permits and special use authorizations are defined in Forest Service regulations, 36 C.F.R. § 251.51(h) and (m) (1984), as are application procedures and permit terms and conditions. 36 C.F.R. §§ 251.54–.64 (1984).

To assist in the overall management of multiple recreational activities and in response to public concern, the Forest Service adopted a management plan for the Whiskeytown-Shasta-Trinity National Recreational Area ("the 1976 Plan"). Pursuant to the 1976 Plan, the Forest Service adopted Forest Service Order 14–58–2 (July 20, 1978), requiring houseboats on Shasta Lake to have special use permits issued from the Forest Service for one-year terms. Authority to regulate permits is duly delegated to the Regional Forester, Forest Supervisor, District Ranger, or other Forest officer. 36 C.F.R. § 251.52 (1984).

From July 20, 1978 until February 22, 1983 Forest Service policy on multiple ownership of houseboats was set forth in a set of standard houseboat use permit conditions ("Old Conditions"). Old Condition 11

prohibited commercial use of houseboats, defined to include rental or offers to rent on a commercial or business basis or as compensation or remuneration for commercial or business activities. Old Condition 13 allowed houseboats to be owned by partnerships provided the permit was issued in the name of one qualified individual who would be responsible for compliance with permit regulations and conditions.

On April 20, 1982 the Forest Service revised the 1976 Plan. Under the 1982 amendments, the existing houseboat use permit system remained in effect. Neither the 1976 Plan nor the 1982 amendments specified the requisite elements for receipt of a private houseboat use permit. Establishment of a houseboat use permit system and regulation of the issuance of permits remained responsibilities duly delegated to the Forest Supervisor, the Regional Forester, the District Ranger, or other Forest Officer. 36 C.F.R. § 251.52 (1984).

Since 1976 practically all the private houseboat permits allowed by the 1976 Plan had been issued. To secure a private permit, it was necessary to file an application with the Forest Service. The Forest Service insisted on knowing at all times who owned the houseboats and who was responsible for complying with their regulations. Each owner or permittee must agree to be bound by all permit terms and conditions. The permit application form states that the person applying for the permit agrees to be bound by permit terms and conditions including such new conditions and stipulations as circumstances may warrant.

In 1982 Forest Service personnel became concerned about the increased number of requests for multiply-owned houseboat use permits. Multiple ownership-timeshare programs were believed to be analogous to rentals and therefore commercial in nature. Forest Service personnel were also concerned that multiple ownership programs for houseboats would lead to increased use of the houseboats which in turn would create overcrowding on the Lake, degrading the quality of the recreational experience

there. During the moratorium on issuance of permits, Forest Service personnel considered revising houseboat permit regulations to devise a method for treating permit applications received from multiple ownership programs.

In February 1983, while GAHC's permit applications were pending, a revised application form for houseboat permits was approved by the Forest Supervisor. That form incorporated a revised set of standard houseboat use conditions ("New Conditions"). The former ban on commercial use found in Old Condition 11 was retained in New Condition 10. The distinction between commercial and personal use was further explained in the language of New Condition 19. New Conditions 20 through 23 embodied the Forest Service policy on multiple ownership of houseboats. These conditions provided, inter alia, that the permittee and the registered owner of the houseboat must be the same.[2]

## DISCUSSION

### A. Constitutional Contentions.

On the final day of trial, the district court granted the defendant's motion for involuntary dismissal. The district court found no merit to GAHC's contention that the Forest Service's conditions were unconstitutionally vague and violative of the equal protection clause.[3]

**2.** New Condition 19 defined personal recreational use "as non-commercial use by the permittee, members of his or her immediate family and guests...." It further provided that "[t]he permitted houseboat shall not be rented or offered for rental on a commercial or business basis or as compensation or remuneration for commercial or business activities. Use of the houseboat as a permanent or seasonal residence is not permitted." (United States Forest Service Houseboat Use Permit Conditions, New Condition 19).

Conditions 20 through 23 provided methods whereby the Forest Service regulated issuance of private permits to multiply-owned houseboats. Those conditions required that owners and permittees be one and the same. Persons participating in timeshare arrangements were required to submit proof of ownership in order to be eligible for a permit. Special information was required to be submitted by corporations

■ An involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) is viewed as "a judgment in defendants' favor following a trial to the court." *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir.1983), *cert. denied*, — U.S. ——, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). Findings of fact are reviewed under the clearly erroneous standard; questions of law are reviewed *de novo. Id.; see also Wilson v. United States*, 645 F.2d 728, 730 (9th Cir.1981).

### 1. Void for Vagueness

GAHC argues that the Forest Service's conditions are unconstitutionally vague because the definition of "commercial use" is so unclear as to make it impossible for it to determine whether its timeshare program falls within that definition.

■ When prohibiting conduct by government regulation, the regulation must be sufficiently clear so "that ordinary people can understand what conduct is prohibited" and so it "does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Economic regulation is subject to "a less strict vagueness test" than criminal laws, *Village of Hoffman Estates v. Flip-Side Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982), and tolerance is greatest in cases where

and partnerships applying for permits. Among the documents that the Forest Service could request to verify ownership and non-commercial status was registration with the Department of Motor Vehicles ("DMV") (New Conditions 20–23).

**3.** While the due process and equal protection clauses of the fourteenth amendment are applicable only to the states, the due process clause of the fifth amendment imposes on the federal government the same obligations that the fourteenth amendment imposes on the states. See *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100, 96 S.Ct. 1895, 1903, 48 L.Ed.2d 495 (1976); see also *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 542 n. 2, 103 S.Ct. 1997, 1999 n. 2, 76 L.Ed.2d 129 (1983). GAHC's "vagueness" and "equal protection" argument fall under the due process clause of the fifth amendment.

the consequences of noncompliance are mere reduction of government subsidy. *Planned Parenthood of Central and Northern Arizona v. State of Arizona,* 718 F.2d 938, 948 (9th Cir.1983) (upholding a vagueness challenge to Arizona statute denying state funds to agencies offering "counseling for abortion procedures"). This less strict vagueness analysis is appropriate since "the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193. The primary question remains "whether the law affords fair warning of what is proscribed." *Id.* at 503, 102 S.Ct. at 1195.

◼ In considering whether an administrative regulation is unconstitutionally vague, the reviewing court must assess it within the context of the particular conduct to which it is being applied. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 33–36, 83 S.Ct. 594, 598–99, 9 L.Ed.2d 561 (1963); *Magic Valley Potato Shippers, Inc. v. Secretary of Agriculture,* 702 F.2d 840, 841 (9th Cir.1983). Any statute imposing a general obligation such as a general duty raises certain problems of fair notice. *Donovan v. Royal Logging Co.,* 645 F.2d 822, 831 (9th Cir.1981) (statute requiring employer to provide hazard-free work place was not void for vagueness). Administrative regulations may often be ambiguous. See *United States v. Larionoff,* 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977). However, regulations "are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal [cases] fall within their language." *National Dairy Products,* 372 U.S. at 32, 83 S.Ct. at 597.

◼ The Forest Service conditions in this case banned commercial use of houseboats. Commercial use was defined as non-recreational use, including, but not limited to, the rental of houseboats. Multiple ownership arrangements were disfavored by the Forest Service. Those arrangements would be closely scrutinized to ensure their non-commercial status. Specific methods for verifying ownership and non-commercial status of such houseboats were set forth in the conditions. The regulations banning commercial use viewed in the context of the purpose of the permit system and with reference to regulations governing multiple ownership of houseboats would enable an applicant to know or reasonably know when the Forest Service would consider a houseboat use to be commercial. See *Stoianoff v. State of Montana,* 695 F.2d 1214, 1218–21 (9th Cir.1983) (upheld vagueness challenge to drug paraphernalia law proscribing, *inter alia,* possession of items "used, intended for use" in activity related to production or consumption of drugs). While the Forest Service regulations certainly are not without ambiguity, they contain specific although not exhaustive descriptions of what constitutes commercial use of a houseboat. A business person of ordinary intelligence would understand that the term "commercial use" as used in the Forest Service conditions encompasses sophisticated as well as simple schemes to operate a houseboat with the purpose and intent of making a profit contrasted to personal or recreational use.

In this case the defendants were aware of the Forest Service's concern with time-share arrangements and the possibility of such arrangements constituting commercial use. There were numerous conversations and correspondence between GAHC and the Forest Service confirming this concern. The Forest Service repeatedly indicated a desire to ensure that any sale of time or use of a houseboat was accompanied by evidence of proportionate ownership. The district court concluded that GAHC's program was in fact commercial in nature, purely for the benefit of the owner-investors. This finding was supported by the substantial tax benefit received by the owner-investors during the lease term. Some of the owner-investors/prospective permittees indicated that they did not use or intend to use the houseboats, were not members of the timeshare partnership and

believed that the houseboats were being rented. GAHC understood that the houseboat use permit conditions prescribing commercial use might serve to justify denying a permit to a houseboat operating under a multiple ownership program where owners received financial benefit from ownership but were not users of the houseboat and users of the houseboat had few of the responsibilities attendant ownership.

2. Equal Protection

 The distinction between commercial and personal use for purposes of permit issuance on its face is rational and not a violation of equal protection. *See McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (a statutory classification will not be set aside "if any state of facts reasonably may be conceived to justify it"); *Parsons v. County of Del Norte*, 728 F.2d 1234, 1237 (9th Cir.) ("[w]here fundamental rights are not substantially burdened [a] regulation will be upheld unless there is no rational basis for its enactment"), cert. denied, —— U.S. ——, 105 S.Ct. 158, 83 L.Ed.2d 95 (1984). The commercial/personal use distinction served the legitimate statutory purpose of allowing the Forest Service to regulate and accommodate multiple uses on Shasta Lake and to avoid overcrowding of the Lake and a degrading of the quality of the recreational experience there. *See County Bd. of Arlington County, Virginia v. Richards*, 434 U.S. 5, 7, 98 S.Ct. 24, 26, 54 L.Ed.2d 4 (1977) ("[t]he Constitution does not outlaw ... social and environmental objectives, nor does it presume distinctions ... to be invidious"). *Accord Sakamoto v. Duty Free Shoppers Ltd.*, 764 F.2d 1285, 1289 (9th Cir.1985) (where economic discrimination alleged government action need only have a rational relationship to legitimate government interest). Nor can a facial attack on the regulations that govern multiple use arrangements and provide that such arrangements be more closely scrutinized for commercial use purposes survive. Because multiple ownership arrangements, specifically those where time and not ownership is purchased, are argu-

ably more analogous to rental agreements entered into for profit and not personal recreation, it is rational to subject such arrangements to closer scrutiny to determine whether they violate the commercial use proscription. *See Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983) (statutory classifications are valid if they bear a rational relation to a legitimate government purpose); see also *Hawaii Boating Ass'n v. Water Trans. Facilities Division*, 651 F.2d 661, 665–66 (9th Cir.1981) (quoting *Baldwin v. Montana Fish and Game Comm'n.*, 436 U.S. 371, 391, 98 S.Ct. 1852, 1864, 56 L.Ed.2d 354 (1978) ) (there is no duty to have a licensing structure identical for residents and non-residents or "to justify to the penny any cost differential ... [imposed] in a purely recreational ... setting").

The only issue on appeal, therefore, is whether the commercial use ban as applied to some multiply-owned houseboat programs and not others is rational, and not discriminatory in violation of the equal protection clause.

 Where a statute draws a classification rational on its face, official action purportedly in conformity with that classification is not without more, a denial of equal protection. *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) (there must be a showing of "intentional or purposeful discrimination.... [A] discriminatory purpose is not presumed"). A regulation should not be invalidated because it fails to achieve its objectives with mathematic precision. *American Hosp. Management Corp. v. Harris*, 638 F.2d 1208, 1212 (9th Cir.1981) (citing *Knebel v. Hein*, 429 U.S. 288, 294–95, 97 S.Ct. 549, 553–54, 50 L.Ed.2d 485 (1977) ). *Accord Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (in the area of economics, imperfect classifications do not offend the Constitution simply because in practice they result in some inequality). The Supreme Court has noted that

Social and economic legislation ... that does not employ suspect classification or impinge on fundamental rights.... carries with it a presumption of rationality that can only be overcome by a clear showing or arbitrariness.... [S]ocial and economic legislation is valid unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." This is a heavy burden, ....

*Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979) ). Accord *Wilderness Public Rights Funds v. Kleppe,* 608 F.2d 1250, 1254 (9th Cir.1979) (provided there is a rational basis for a classification, there is a judicial presumption favoring the validity of administrative action taken pursuant thereto), *cert. denied sub nom.,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). Finally, the equal protection clause does not compel the government to attack every aspect of the problem or refrain from regulating at all. *Dandridge,* 397 U.S. at 486–87, 90 S.Ct. at 1162; *Parsons,* 728 F.2d at 1238. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949) (a traffic regulation outlawing the operation of advertising vehicles but permitting advertising on vehicles engaged in their usual business was upheld as rationally related to traffic safe-

ty concern of preventing distracting of pedestrians) (citing *Central Lumber Co. v. South Dakota,* 226 U.S. 157, 160, 33 S.Ct. 66, 67, 57 L.Ed. 164 (1912) ).

■ The crux of GAHC's equal protection claim is that there were insufficient bases for distinguishing GAHC's time-share/interval ownership program from the corporate multiple ownership program for Shasta Cruiser One, Two and Three houseboats ("Shasta Cruiser"), a successful permit applicant. GAHC contends that the district court's attempt to distinguish these programs was based on an erroneous interpretation of the effect of GAHC's lease arrangements. According to GAHC, the district court's finding that its lease arrangement was a true lease and not a sale misapprehended the nature of the lease arrangement and resulted in the erroneous conclusion that the owner-investors, rather than the partnership and the interval owners, owned the houseboats. If the court had correctly viewed these lease arrangements, GAHC contends its interval owners, like Shasta Cruiser's shareholders, would have been deemed the houseboat owners. The only difference between its program and those of Shasta Cruiser would then be that one was a partnership while the other was a corporation. This distinction in the form of business organization could not rationally justify the Forest Service's differing application of its regulations.

Even assuming GAHC is correct that the district court erred in interpreting the lease and relying on that interpretation to find dissimilarity between these programs,[4] there were other sufficient bases for distin-

---

**4.** GAHC contends that its timeshare arrangement was a sale as a matter of law because when the last lease payment was made by the interval owner, legal title passed to the partnership for no additional consideration. *Compare In re J.A. Thompson,* 665 F.2d 941, 945–47 (9th Cir.1982) (under California law, in determining whether a lease is "intended as security," if a lease contains an option to purchase "for no additional consideration or for nominal consideration," it is conclusively presumed to be "intended as security") *with Triple C. Leasing, Inc. v. All-American Mobile Wash,* 64 Cal.App.3d 244, 248–52, 134 Cal.Rptr. 328, 330–31 (Ct.App.1976)

(the trial court's determination that a lease was a true lease and not a sale was factual and would be upheld if supported by substantial evidence). This is alleged to be true even where there is a revocable option to purchase and the lease contemplates purchase of only use. *See Thompson,* 665 F.2d at 946–47; *but see Western Helicopter Operations v. Nelson,* 118 Cal.App.2d 359, 366, 257 P.2d 1025, 1030 (Ct.App.1953) (an option merely gives a right or election to purchase. There is no obligation to buy or sell); 42 Cal.Jur.3d, *Leases of Personal Property* § 1–5 (1978) (same).

guishing GAHC's permit application from Shasta Cruiser's. With respect to Shasta Cruiser, corporate shareholders were both owners and users of the houseboats which were used solely for recreational purposes. The shareholders, apparently family members, were also directors of the corporation. They could not and did not depreciate the houseboats for tax purposes. There were no lease arrangements and complete information was supplied to the Forest Service. The same was not true of GAHC's program. Because of the complex lease arrangement and the failure to provide complete information to the Forest Service, the actual owners of GAHC's houseboats were difficult to ascertain to verify non-commercial use. GAHC's owner-investors depreciated the vessels and enjoyed tax benefits from ownership, but did not necessarily use the houseboats. While GAHC's interval owners purchased the use of the houseboats, they accepted none of the benefits or burdens of ownership. Therefore, even if GAHC's leases transferred an ownership interest to the partnership and in turn the interval owners, GAHC's situation was distinguishable from Shasta Cruiser's corporate transaction. The Forest Service rationally could have concluded that GAHC's program more likely ran afoul of the policies underlying the commercial use ban, thus warranting the denial of a permit. That other multiple ownership programs might also constitute commercial use is of no import. Provided the Forest Service acted rationally and without malice in applying the commercial use ban to GAHC, which it did, and provided there was a rational basis for distinguishing GAHC from other applicants, which there was, there is no equal protection violation.

## B. Duly Delegated Authority.

Finally, GAHC contends the Forest Service, specifically District Ranger Fitch, exceeded the scope of delegated authority by promulgating new conditions relating to the commercial use of houseboats. GAHC also maintains that the new conditions were promulgated for the illegitimate purpose of singling it out for discriminatory treatment.

The promulgation of new conditions in the adoption of a revised form to regulate issuance of permits to multiply-owned houseboats wes consistent with the Forest Service's obligations to regulate and issue permits for competing recreational activities on Shasta Lake. *Cf. Borrego v. United States*, 577 F.Supp. 408, 411–12 (D.N.M.1983) (Forest Supervisor did not exceed his delegated authority by promulgating "bull rule" as a special permit condition where Forest Service had been granted broad authority to regulate grazing on Forest Service lands). The conditions and their interpretations so as to limit the issuance of permits to multiply-owned houseboats is not plainly erroneous or inconsistent with the regulatory scheme. *Id.* at 412; *see also Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–15, 65 S.Ct. 1215, 1217–18, 89 L.Ed. 1700 (1945); *American Hosp. Management Corp.*, 638 F.2d at 1212. The conditions and their application were rational and served a legitimate purpose. *See Bowles*, 325 U.S. at 413–15, 65 S.Ct. at 1217–18; *Goleta Valley Community Hosp. v. Schweiker*, 647 F.2d 894, 897 (9th Cir.1981).

The district court's conclusion that there was insufficient evidence to prove an illegitimate discriminatory purpose in adopting these regulations was not clearly erroneous. *See* Fed.R.Civ.P. 52(a) (questions of fact are reviewed under the clearly erroneous standard). The record does not disclose any evidence of malice on the part of the Forest Service. There was substantial evidence establishing a legitimate concern by the Forest Service for trying to accommodate the unanticipated and complex problem of the effect of multiple ownership houseboat programs on the use of Shasta Lake.

AFFIRMED.